[No. 34403. Department Two April 24, 1958.].

MELVIN K. KNIGHT et al., Appellants, v. FLOYD BORGAN, Respondent.[1]

[1]Reported in 324 P. (2d) 797.

*McMullen, Snider & McMullen*, for appellants.

*Donald Simpson*, for respondent.

DONWORTH, J.—This action arises out of an automobile collision, which occurred within a controlled intersection in Vancouver shortly before eleven o'clock a. m. on December 12, 1955.

The cause was tried to a jury, which returned a verdict in favor of the plaintiffs. The trial court thereafter granted the defendant's motion for judgment n.o.v. and dismissed the action. This appeal follows.

Appellants first assign error to the granting of respondent's motion for judgment n.o.v. and the entry of judgment of dismissal pursuant thereto. In reviewing the propriety of the trial court's action in this regard, we are—as was the trial court—obliged to consider the evidence in the light most favorable to appellants and to give them the benefit of every favorable inference which can reasonably be drawn from such evidence.

So viewed, the facts appear as follows:

Immediately prior to the collision of the two cars, appellant Mildred Knight (hereinafter referred to as if she were the sole appellant) was riding as a guest passenger in a two-door automobile driven by her host, Mrs. Green. Mrs. Knight was seated on the right-hand side of the front seat. Respondent, a member of the Vancouver police department, accompanied by another officer, was operating a city-owned automobile (hereinafter referred to as respondent's car).

Columbia street and Tenth avenue are paved streets intersecting at right angles. Columbia is an arterial thoroughfare running north and south. It is fifty and one half feet wide. Tenth avenue extends east and west. Its width is approximately fifty-six and one half feet.

Mrs. Green, the disfavored driver, was proceeding westward on Tenth. Respondent was northbound on Columbia. Intending to proceed across Columbia, Mrs. Green stopped her car on Tenth at the stop sign. She looked first to her left and saw a car approaching from the south about a block away. She then looked to her right hand and, seeing that she had "ample" time, proceeded across Columbia.

As respondent approached from the south, he was changing lanes of travel from the outward to the inward lane, intending to turn left at Eleventh avenue.

As Mrs. Green was crossing Columbia, appellant looked to her left, saw respondent's vehicle approaching, and screamed. Almost immediately thereafter the cars collided. The front of respondent's vehicle made contact with the Green automobile near the left rear wheel. The point of impact was established as being several feet north of an assumed center line on Tenth and approximately seventeen feet five inches west of the east curb line of Columbia.

Immediately after the impact, the Green automobile made a semicircular movement, the rear of the car tending to pivot laterally around its skidding front wheels. Somewhere in the course of this skidding, the right front door came open, and appellant tumbled out onto the pavement. Her body came to rest in the northwest quadrant of the intersection. She sustained serious injuries.

Mrs. Green made no attempt to stop her car after starting across Columbia. Respondent applied the brakes on the city-owned car, the wheels locking before the impact. The individual skid mark of each tire on the city-owned car ranged from thirty feet seven inches to forty feet four inches. The momentum of the Green car, coupled with the force of the impact, caused the rear wheels of the Green car to skid approximately forty-three feet in a semicircular direction around the front wheels, which left similar skid marks about thirteen feet eight inches in length.

The cause was submitted to the jury upon the issue of alleged negligence of respondent (1) in operating the city automobile at an excessive rate of speed, and (2) in causing

it to collide with the automobile in which appellant was a passenger when, by the exercise of ordinary care, he could have avoided the collision.

No issue of contributory negligence on the part of appellant is involved in this case. Since the negligence, if any, of Mrs. Green is not imputable to appellant (*Winston v. Bacon*, 8 Wn. (2d) 216, 223, 111 P. (2d) 764 (1941)), the propriety of granting the motion for judgment n.o.v., entered upon respondent's motion, necessarily depends upon the sufficiency of the evidence to support the submission of the case to the jury for the determination of questions of fact as to: (1) whether respondent was negligent in either or both ways above mentioned, and, if so, (2) whether such negligence was a proximate cause of the collision which resulted in appellant's injuries.

The maximum lawful speed on Columbia street at the intersection in question was twenty-five miles per hour. Appellant offered no direct evidence whatever that respondent exceeded that speed. Since appellant did not see respondent's vehicle until an instant before the collision, she was unable to estimate its speed. Mrs. Green, while stopped before attempting to cross the arterial, observed *a* car (respondent's) approaching the intersection at a distance of one block away. She then looked to her right before proceeding across Columbia but did not again look to her left. She was unable to estimate the period of time that elapsed between the moment she looked to her left and the moment she started forward. On the other hand, respondent estimated his speed to be between twenty and twenty-five miles per hour. That testimony was corroborated by Mr. Axlund (the officer accompanying respondent) and another disinterested witness who had observed both cars just prior to the collision. Hence, the only direct evidence indicates the speed of respondent's vehicle as being within the speed limit.

The circumstantial evidence consists of the skid marks left by respondent's vehicle before the collision, the relative position of both vehicles at the point of impact, the skid

marks left by both cars after the impact, the course pursued by the respective automobiles after the impact, and the physical damage (as indicated by photographs) sustained by each vehicle as a result of the collision.

We particularly note that the skid marks made by respondent's vehicle immediately *prior to the collision* constitute the only circumstantial evidence solely and directly attributable to the speed of the car. All of the other physical circumstances are attributable to a combination of forces, *i.e.*, the force which each vehicle exerted against the other at the point of impact. Since there is no evidence as to the speed of the Green car at that point, it is impossible to determine the extent to which that factor contributed to the ultimate result.

The evidence admitted by the trial court relating to the speed of respondent's car, both direct and circumstantial, is without conflict. However, appellant contends that the circumstantial evidence is sufficient to support the verdict of the jury.

■ We have held that evidence of physical damage sustained by automobiles as a result of a collision is not, of itself, a sufficient basis upon which to form an inference of excessive speed. *Huber v. Rosing,* 22 Wn. (2d) 110, 154 P. (2d) 609 (1944); *Proper v. Brenner,* 191 Wash. 540, 71 P. (2d) 389 (1937). But, in a long series of cases, we have recognized that circumstantial physical evidence concerning the nature of the impact and the violence of the collision, together with its results, may be taken into consideration in determining the rate of speed. *Adkisson v. Seattle,* 42 Wn. (2d) 676, 258 P. (2d) 461 (1953); *Graham v. Roderick,* 32 Wn. (2d) 427, 202 P. (2d) 253, 6 A. L. R. 1237 (1949); *Christensen v. Grays Harbor County,* 34 Wn. (2d) 878, 210 P. (2d) 693 (1949); *Hauswirth v. Pom-Arleau,* 11 Wn. (2d) 354, 119 P. (2d) 674 (1941); *Johnson v. Ohman,* 10 Wn. (2d) 466, 117 P. (2d) 217 (1941), and cases cited therein.

However, in certain cases wherein it has been sought to overcome direct testimonial evidence by reference to physical facts circumstantially evidencing the rate of speed at a

given time and place, we have sustained the refusal of the trial court to submit the issue of excessive speed to the jury. *Jamieson v. Taylor*, 1 Wn. (2d) 217, 95 P. (2d) 791 (1939); and *Fisher v. Hemrich Brewing Co.*, 183 Wash. 489, 49 P. (2d) 1, 53 P. (2d) 1198 (1935) (wherein the physical factors indicating excessive speed were much stronger than those presented in the present case).

In *Jamieson v. Taylor, supra*, where we quoted from the *Fisher* case, *supra*, with reference to an argument substantially the same as that now before us, we said:

" 'From the force, violence and results of the collision, appellant argues that it may be inferred from such evidence that the speed of the truck was much greater than thirty-five miles an hour, and that the testimony of the witnesses as to its speed was no more than estimates; citing *Osborn v. Seattle*, 142 Wash. 25, 252 Pac. 164; *Day v. Polley*, 147 Wash. 419, 266 Pac. 169; *Copeland v. North Coast Transportation Co.*, 169 Wash. 84, 13 P. (2d) 65; and *Gaskill v. Amadon*, 179 Wash. 375, 38 P. (2d) 229, to the effect that the jury might infer excessive speed from the violence of the impact and the results therefrom.

" 'The difficulty with that argument is that no such justifiable inference can be drawn from such circumstances and results, because of the positive evidence produced by appellant by eye witnesses as to the rate of speed of respondent's truck.' "

The feature which distinguishes *Vercruysse v. Cascade Laundry Co.*, 193 Wash. 184, 74 P. (2d) 920 (1938), cited by appellant from the *Fisher* case, is equally applicable here. In the former case there was *no* testimony of *disinterested* witnesses concerning the speed of the favored driver. That same feature distinguishes the present case from *Pyle v. Wilbert*, 2 Wn. (2d) 429, 98 P. (2d) 664 (1940), and *Beaty v. Linn*, 49 Wn. (2d) 593, 304 P. (2d) 951 (1956).

Recently, in *Bellantonio v. Warner*, 47 Wn. (2d) 550, 288 P. (2d) 459 (1955), we reaffirmed the position taken by this court in *Adkisson v. Seattle*, 42 Wn. (2d) 676, 691, 258 P. (2d) 461 (1953), which we quoted with approval as follows:

" 'Trial courts should be hesitant in submitting to the jury the question of the rate of speed merely from a con-

sideration of the physical facts alone. . . . If the trial judge, in the exercise of his discretion, feels that the jury could arrive at a decision (*as distinguished from a mere guess or speculation*) as to the rate of speed by a consideration of the physical facts, such as the amount of physical damage done, the distance a car travels after the impact, etc., then he should submit such issue to the jury.'" (Italics ours.)

 It necessarily follows that, in order to overcome positive testimony of disinterested witnesses to the contrary, the physical facts tending to indicate excessive speed must be much stronger than would otherwise be necessary in the absence of such disinterested testimony.

 In the present case, the only physical facts which bear directly on the issue of respondent's speed immediately prior to the collision are the tire marks left on the pavement as a result of skidding, with tires locked, to the point of impact. (The significance of these marks does not appear in the record because the trial court ruled that the subject was beyond the realm of expert testimony, basing his ruling upon certain cases hereinafter discussed.) As previously stated, these marks measured approximately forty feet for the front tires and thirty feet for the rear tires. In the absence of an explanation of their significance, proof of the existence of these skid marks is insufficient to overcome the uncontradicted testimony that respondent's car was not exceeding the lawful speed limit.

We are satisfied that, on the basis of the evidence admitted by the trial court, the jury was not entitled to infer, or to "arrive at a decision (as distinguished from a mere guess or speculation)" (*Adkisson v. Seattle, supra*), that respondent's speed was in excess of that stated in the direct testimony on that issue, particularly in view of the fact that the circumstantial evidence relied upon to overcome that testimony does not appear any more consistent with an unlawful rather than a lawful rate of speed. Hence, because of the insufficiency of competent evidence to support the verdict, it cannot stand.

Under the peculiar circumstances of this case, while the

trial court was correct *on the basis of the evidence which was admitted* in holding that respondent's motion for judgment n.o.v. was well taken, nevertheless, we cannot affirm its judgment of dismissal, because the lack of sufficient evidence was not due to any fault of appellant but was caused by the trial court's error in excluding certain evidence (hereinafter discussed) offered by appellant. Therefore, we must refuse to order entry of judgment on the verdict, and consider the assignments of error which appellant claims entitle her to a new trial.

Appellant offered to prove by Sergeant Grimes, apparently an expert witness, the minimum rate of respondent's speed as indicated by the above mentioned skid marks. No objection was made to the qualifications of Sergeant Grimes to testify, but, upon respondent's objection, the trial court ruled that the proof offered was not a proper subject for expert testimony. Appellant assigns error to the exclusion of that testimony.

█ It is the general rule that a proper matter for expert testimony is one the intelligent understanding of which calls for some special skill, experience, or knowledge beyond that possessed by the ordinary person. *Oyster v. Dye,* 7 Wn. (2d) 674, 110 P. (2d) 863, 133 A. L. R. 720 (1941).

In the present case, the speed of respondent's vehicle was of vital importance in endeavoring to establish appellant's cause of action. Because neither appellant nor Mrs. Green was able to formulate an opinion as to respondent's speed based upon actual observation, appellant was required to rely entirely upon the circumstances surrounding the accident in order to overcome the positive evidence of at least one disinterested witness based upon his observation of respondent's vehicle.

█ We are satisfied that the determination of the rate of speed of an automobile based upon tire skid marks of a certain length, made under a given set of circumstances, is not a matter of such general knowledge as to be within the common experience of laymen. Hence, the opinion evidence of a *qualified expert* was admissible to assist the jury

in properly understanding the significance of the skid marks. The opinion testimony offered by appellant should, therefore, have been admitted in evidence for whatever weight the jury might wish to attach to it. See *Ruther v. Tyra*, 207 Okla. 112, 247 P. (2d) 964 (1952); *Continental Oil Co. v. Elias* (Okla.), 307 P. (2d) 849 (1956); *Ferguson v. Hurford*, 132 Colo. 507, 290 P. (2d) 229 (1955); *State v. Bosch*, 125 Mont. 566, 242 P. (2d) 477 (1952); Annotations, 70 A. L. R. 544, *et seq.*; 23 A. L. R. (2d) 141, *et seq.*; 9C Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.) § 6238, p. 416; 20 Am. Jur., Evidence, § 805. (Of course, the experiential qualifications of such witness should be left to the sound discretion of the trial court. *Oyster v. Dye, supra.*)

Contrary to the contention of respondent, we see no conflict between the rule above announced and the rule which precludes the admission of *nonexpert* opinion evidence on the same subject. *Cleasby v. Taylor*, 176 Wash. 251, 28 P. (2d) 795 (1934). In the latter case, any opinion would necessarily have invaded the province of the jury, because the nonexpert is no better qualified than are the jurors to reach a conclusion, however speculative it might be.

Nor is the above rule inconsistent with prior decisions of this court holding inadmissible in evidence the testimony of expert, or nonexpert, witnesses who had not observed the particular vehicles in motion but attempted to estimate the relative speeds of such vehicles (prior to colliding) merely from an examination of: (a) the physical damage sustained by each vehicle (*Ewer v. Johnson*, 44 Wn. (2d) 746, 270 P. (2d) 813 (1954); *Allen v. Porter*, 19 Wn. (2d) 503, 143 P. (2d) 328 (1943); *Warren v. Hynes*, 4 Wn. (2d) 128, 102 P. (2d) 691 (1940); (also, *State v. Carlsten*, 17 Wn. (2d) 573, 136 P. (2d) 183 (1943), concerning severity of impact); or (b) a combination of circumstances relating to a collision, including an investigation of the accident scene, a consideration of the physical damage sustained by each vehicle, and other resulting conditions. *Montgomery v. Hyatt*, 46 Wn. (2d) 468, 282 P. (2d) 277 (1955); *Oyster*

*v. Dye, supra*; and *Cook v. Stimson Mill Co.*, 41 Wash. 314, 83 Pac. 419 (1906).

In each of the cases cited under (a) above, the opinion of the witness was held to be no more than a guess, having no substantive evidentiary value. However, in each of the cases cited under (b), the witness was called upon to give an opinion upon the precise ultimate issue of fact which it was the duty of the jury to decide, *viz.*, the speed of the particular vehicle involved as established from a consideration of *all* surrounding circumstances. Hence, any opinion given would necessarily invade the province of the jury as finder of the fact. Moreover, in each of the last two cases cited, the witnesses were not shown to possess any extraordinary skill, knowledge, or experience which would qualify them to render an opinion that could be of value to the jury.

We conclude that the refusal of the trial court to admit in evidence the opinion testimony of the witness Grimes for the reasons stated by the trial court in this case constitutes prejudicial error.

Although the trial court was correct in granting respondent's motion for judgment n.o.v. on the basis of the evidence contained in the record, we must, nevertheless, conclude that a new trial must be granted because of the exclusion of the proffered testimony of Sergeant Grimes.

Since a new trial must be ordered, we find it necessary to consider certain assignments of error (made by each party) relating to matters likely to occur upon retrial.

On several occasions between the time of the collision and the time of the trial, Dr. Knight (husband of appellant), operating a 1955 Buick, and at other times a 1941 Chevrolet, while traveling north on Columbia, approached the intersection of Tenth and Columbia at a constant speed of twenty-five miles per hour. He applied his brakes as the front wheels of the car were in the crosswalk. The condition of the pavement at the time of his experiments was dry and similar to that which existed at the time of the accident. After testifying to these facts, he was prevented, upon respondent's objection, from giving testimony concerning

the results of these tests. Appellant made an offer of proof in the following language:

"If the Court please, at this time we offer to prove by this witness that on a number of occasions he has operated an automobile north on Columbia into the intersection formed by Columbia and Tenth Street and at a rate of speed of 25 miles and he has applied his brakes to determine the period in which it may be decelerated from the rate of speed at which it is going down to a complete stop; that such experimentations were carried on on various days under pavement conditions comparable to that that existed at the time of the accident; that he was able to bring his car to a full and complete stop at 25 miles an hour at a distance of less than 25 feet, as a matter of fact, in the neighborhood of less than 20 feet, but, in any event, less than 25. . . ."

Respondent objected to the admission of this testimony on the grounds that the witness had not shown himself qualified to testify as an expert, and that the conditions under which the tests were made were "very clearly approximations . . . in effect, speculation and conjecture." The court ruled: "At the moment I will refuse the offer." Later, another of appellant's witnesses testified that respondent's car was a Chevrolet sedan.

Before resting her case, appellant's offer of proof with respect to Dr. Knight's testimony was renewed. This offer was also denied by the trial court. Appellant assigns error to that ruling.

In *Barnes v. Labor Hall Ass'n,* 51 Wn. (2d) 421, 319 P. (2d) 554 (1957), we recently held:

"Experiments are permitted, and the results thereof admissible, only when the conditions under which they are conducted are substantially similar to those existing at the time of the accident or occurrence in question. In ruling upon such matters, the trial court exercises its discretion and our review is limited to whether there has been an abuse of this judicial discretion. See *State v. McMurray,* 47 Wn. (2d) 128, 286 P. (2d) 684 (1955), and cases discussed therein."

However, in *State v. McMurray,* 47 Wn. (2d) 128, 286 P. (2d) 684 (1955), we quoted with approval from *Amsbary v.*

*Grays Harbor R. & Light Co.*, 78 Wash. 379, 139 Pac. 46 (1914), which reads, in part:

" 'The exercise of such discretion will, upon appeal, be viewed somewhat more critically when such evidence is rejected than when it is received. This would seem to be so because of the fact that the admission or rejection of such evidence, in so many instances, has to do more with its weight than with its relevancy, strictly speaking.' "

■ As so viewed, we cannot say that the trial court abused its discretion in the instant case. First, the relative condition of the brakes and tire surfaces of the vehicles tested was not shown to be similar to the condition of those on the colliding vehicle. Second, the automobiles tested were not shown to be comparable either in weight or age. See *Truva v. Goodyear Tire & Rubber Co.*, 124 Wash. 445, 214 Pac. 818 (1923); Annotations, 72 A. L. R. 865, 866. But third, and more important, is the failure to show that the results of these experiments conducted by Dr. Knight would generally be obtained by other motorists. Inasmuch as the results offered in evidence are much less than the stopping distances generally accepted (See 9C Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.) § 6237, p. 410, 413), we are of the opinion that they tend to show nothing more than Dr. Knight's particular ability to stop quickly when prepared to do so.

In his answer, respondent denied the allegations of the complaint charging that his negligence was a proximate cause of the collision. By affirmative defense, respondent alleged that the *sole* proximate cause of the collision was the negligence of Mrs. Green in certain respects. In so doing, respondent alleged affirmatively, and particularly, matters already in issue under his denial of appellant's allegations. Respondent contends that the trial court erred in striking that affirmative defense.

■ The burden was upon appellant to prove that respondent's negligence, as alleged in her complaint, was *a* proximate cause of the collision. If the conduct of some other person, whether negligent or not, was the *sole* proxi-

mate cause, then respondent would not be liable. Since any negligent conduct of Mrs. Green could not be imputed to appellant, it is immaterial whether or not Mrs. Green was negligent. Hence, the affirmative defense alleging the negligence of Mrs. Green in various respects was properly stricken by the trial court. But that did not relieve appellant of the burden of proving that respondent's negligence, as alleged in her complaint, was *a* proximate cause of the collision because that allegation was denied in respondent's answer.

Appellant contends that it was error to give instruction No. 6, by which the court advised the jury that

"The laws of the State of Washington provide:

" 'The operator of a vehicle shall stop as required by law at the entrance to any intersection with an arterial public highway, and having stopped shall look out for and give right of way to any vehicles upon the arterial highway simultaneously approaching a given point within the intersection, whether or not his vehicle first reaches and enters the intersection.' "

 The issue of proximate cause raised by the pleadings necessarily put in issue certain reciprocal rights and duties of the respective drivers. By instruction No. 6, the jury was advised of a duty imposed by law upon Mrs. Green before crossing the arterial. There is evidence that she did not stop before entering the intersection, which, if believed by the jury, would also justify a finding that her failure so to do was the *sole* proximate cause of the collision. Although the negligence of Mrs. Green was not in issue, we think the instruction was proper in advising the jury generally of the relative duties imposed by law upon Mrs. Green and upon respondent, respectively, as drivers of motor vehicles at the intersection involved in this case.

Respondent contends that the trial court erred in refusing to give his proposed instruction, which states:

"In the event that you find that the sole proximate cause of the collision and resulting injuries and damages to the plaintiffs was some *negligent* act of the driver of the car in which plaintiff Mildred A. Knight was riding *as alleged in*

*defendant's answer*, then you shall return a verdict for the defendant." (Italics ours.)

█ Since the affirmative defense of respondent had been properly stricken by the court, the references to the negligence of Mrs. Green (italicized above) would only tend to confuse the jury. While the evidence in support of respondent's denial was sufficient to support an instruction on that precise issue, we are unable to say that the refusal of the trial court to give the proposed form of such instruction would constitute prejudicial error.

Respondent next assigns error to an instruction given concerning the rule of "sudden emergency," and to the refusal of the trial court to give respondent's proposed instruction upon the same subject. We have approved the rule as expressed in the proposed instruction in *Ruff v. Fruit Delivery Co.*, 22 Wn. (2d) 708, 721, 157 P. (2d) 730 (1945). Inasmuch as it does not tend to overemphasize the fact that, in order to be entitled to the benefit of the rule, the party claiming "sudden emergency" must himself be free from negligence, the proposed instruction would, upon retrial, appear preferable to that given by the court in this case.

For the reasons herein stated, the judgment dismissing the action is reversed, with directions to grant appellant a new trial.

FINLEY, ROSELLINI, FOSTER, and HUNTER, JJ., concur.