127 So.2d 476 (1961)
Robert Earl HUFF, individually and for the use and benefit of Cosmopolitan Mutual Insurance Company, a corporation, Appellant,
v.
James BELCASTRO and Michael Labagnara, Appellees.
No. 59-737.
District Court of Appeal of Florida. Third District.
March 2, 1961.
Rehearing Denied March 21, 1961.
*477 Welsh, Cornell, Pyszka & Carlton and Phillip Goldman, Miami, for appellant.
Dixon, DeJarnette, Bradford, Williams, McKay & Kimbrell and Paul A. Carlson, Miami, for appellees.
HORTON, Chief Judge.
The plaintiff-appellant seeks review of a judgment entered upon a verdict directed for the defendants at the close of plaintiff's case.
The plaintiff sought damages for personal injuries resulting from the alleged careless, negligent and reckless operation by appellee Labagnara of a motor vehicle owned by the appellee Belcastro. By their answer, the appellees admitted that Labagnara was operating the motor vehicle with the knowledge and consent of the owner Belcastro. The charge of negligence was denied, and, in addition, the appellees pleaded the affirmative defense of contributory negligence.
The accident from which this action arose occurred when the appellant was struck by appellees' motor vehicle while attempting, in the nighttime, to cross the southbound lanes of Collins Avenue in Bal Harbor Village. Collins Avenue, at the site of this accident, consists of two northbound and two southbound traffic lanes. A series of islands divide the north and southbound lanes. On the night of the accident, the appellant was attempting to cross from the east to the west side of Collins Avenue, and had succeeded in crossing the northbound lanes of traffic into a traffic way between two of the dividing islands. The appellant testified that he stationed himself approximately three feet from the northwest end of the southernmost island and from this point observed the southbound traffic. He further testified that after permitting five or six vehicles to pass, he looked and saw that the traffic was clear and then proceeded to cross the southbound lanes. The appellant then testified as follows:
"A. * * * and I got along to the center of the street; and I heard a noise, the sound of a car; and I looked, and I saw a blur. And the next thing, I was hit.
"Q. Now, could you identify that blur when you looked? A. Well, I could tell by the sound of it it was an automobile.
"Q. All right. Now, Mr. Huff, did that automobile have any headlights on? A. I didn't see any lights on the car, sir."
The appellant approximates that he was just over the line dividing the two southbound lanes of traffic when he was hit. He was found approximately two feet from the west curb and his hat and glasses were found in the center of the street.
Appellee Labagnara was called as a witness by the appellant and testified that he was traveling south on Collins Avenue in the east or inside lane of traffic and that he talked occasionally with a passenger. At the scene of the accident, he suddenly saw an object dart out in front of his car; the object was moving from left (east) to right (west). The appellee then responded as follows:
"Q. Well, Mr. Labagnara, when you first saw him was he already in front of your car or was he to the left of your car or was he to the right of your car? Where was he? A. Well, I would say he was on the right of my car.
"Q. Already passed the front of your car when you first saw him? A. *478 When I first saw him he was in motion.
"Q. Yes, sir. A. And when I first saw him and he had a certain amount of time to cover a little  I would say a little footage, at the rate of speed he was going, so when I first seen him, I say about in the center of the car, and by the time the accident took place, I would say he was on the right of the car because he was moving at the time fast."
The appellee Labagnara then testified that he applied brakes, swerved to the right in an attempt to avoid the appellant and the right front of the vehicle struck the appellant. After the impact, he backed his vehicle up.
The investigating officer testified that the skid marks of the right rear tire were 71 feet and the left rear tire were 73 feet, and that the skid marks extended across the center line. The appellee testified that his headlights were on at the time of the accident and that he was driving 25-30 miles per hour. The trial court refused to allow testimony of an expert witness offered to establish that the minimum speed of the vehicle exceeded the lawful speed limit.
The determinative question on this appeal is whether the trial court erred in ruling as a matter of law that the evidence, interpreted in the light most favorable to the appellant and giving him the benefit of all intendments and reasonable inferences and deductions, was insufficient to submit the cause to a jury.
In considering the propriety of an order directing a verdict for the defendant at the close of the plaintiff's case, an appellate court will indulge every reasonable inference from the evidence which is favorable to the plaintiff. Teare v. Local Union #295, Fla. 1957, 98 So.2d 79. As has often been said: "A verdict should never be directed unless the evidence is such that under no view that the jury might lawfully take of the evidence favorable to the adverse party could a verdict for the adverse party be sustained." 32 Fla.Jur., Trials, § 93, and cases collected therein.
In the case of Nelson v. Ziegler, Fla. 1956, 89 So.2d 780, 783, the Supreme Court considered an analogous situation and the rationale of that opinion appears appropriate to the case at bar:
"Many years ago this court aligned itself with the view that an automobile is a dangerous instrumentality and while the driver thereof is certainly not an insurer of the safety of those who project themselves into his pathway, he is charged with the responsibility of having his vehicle under control at all times, commensurate with the circumstances and the locale. Another of his responsibilities is to maintain a sharp and attentive lookout in order to keep himself prepared to meet the exigencies of an emergency within reason and consistent with reasonable care and caution.
"The conduct of this appellant certainly is not to be recommended as a plan for living out the allotted three-score and ten. In fact, this record suggests that he is fortunate to be living at all. We do not here hold as a matter of law that the appellant was free of contributory negligence. Furthermore, we are not here holding that the appellee was by any manner of means guilty of negligence as a matter of law. We do hold that on the basis of the record now before us the questions were for determination by the jury rather than by the trial judge. If the jury had passed on this situation and had found in favor of the appellee under appropriate instructions, we seriously doubt that we could have found any basis for disputing their judgment. By the same token, there is an area of proof in this record that could properly justify a jury of reasonable men in arriving at a conclusion that the appellant's perilous position in the street would or should have been known to appellee in time for her to have avoided the injury if she had been keeping a proper lookout and therefore the sole proximate cause of the injury despite appellant's conduct *479 could have been appellee's failure to maintain such lookout or her failure to avoid the injury if by the exercise of reasonable care and caution commensurate with all of the circumstances she could have avoided it.
"Because of this situation and without in any fashion intending to indicate our own view of the ultimate rights of these parties, we think that it was error to withdraw the case from the consideration of the jury." [Emphasis in original opinion]
Further, the appellant has argued the applicability of the doctrine of last clear chance. Where, as here, the jury may make a finding of fact compatible with the doctrine of last clear chance, the court's charge should explain the doctrine and authorize its consideration and application by the jury if their findings establish its applicability. Radtke v. Loud, Fla.App. 1957, 98 So.2d 891; Rosenfeld v. Knowlton, Fla.App. 1959, 110 So.2d 90; Hodell v. Snyder, Fla.App. 1960, 122 So.2d 36, 37.
Since this case is to be retried, we consider it our duty to comment upon the alleged error of the trial court in excluding expert testimony offered to show the minimum speed at which the defendant's vehicle was being operated at the time of the accident.
Clearly, the trial court recognized the qualifications of the witness,[1] but sustained the objection to the expert's opinion on the theory that the conditions under which the tests were conducted were not the same as those existing at the time of the accident, nor were the circumstances surrounding the situation the same. As indicated by the questions asked the witness, his opinion as to the speed of defendant's vehicle was based upon certain tests that he had conducted and the physical facts he found at the scene, coupled with facts which had foundation in the record.
The tests in question were made to compute speed and were performed with a 1957 Chrysler automobile similar to the automobile which was involved in the accident. These tests were performed at the scene of the accident in question, however, on a day subsequent thereto.
We are familiar with the opinion in the case of Kerr v. Caraway, Fla. 1955, 78 So.2d 571, and our subsequent opinion in Madden v. Killinger, Fla.App. 1957, 97 So.2d 205, to the effect that where speed is material to the issue of the case, the testimony of an expert is admissible, its weight, sufficiency and value for the jury to determine. In addition, we recognize that the opinion of a skilled witness testifying as an expert may be based, in part at least, upon the results of tests or experiments made by him. 3 Chamberlayne, Modern Law of Evidence, § 2381a. However, as indicated in 13 Fla.Jur., Evidence, § 301: "Experimental evidence should be received with caution, however, and should be admitted only when it is obvious to the court from the nature of the experiments that the jury will be enlightened rather than confused." As a prerequisite to the admission of this evidence, it must be shown that the experiment was made under conditions substantially similar to those which prevailed at the time of the accident and the determination of the similarity of the circumstances and conditions must be left to the sound discretion of the trial court, subject to review only for abuse. See Kelly v. Troy Laundry Co., 46 Idaho 214, 267 P. 222; Pool v. Day, 143 Kan. 226, 53 P.2d 912; Knight v. Borgan, 52 Wash.2d 219, 324 P.2d 797; Annotation 73 A.L.R. 863. Contra Norris Bros. v. Mattinson, Tex.Civ. App., 145 S.W.2d 204.
In considering the nature of the testimony sought to be elicited, the foundation upon which it was obviously based and the admixture of proven fact and experiment in the hypothetical question propounded, we conclude that the trial judge did not, under these circumstances, abuse his discretion in excluding the expert testimony.
*480 In consideration of the views expressed, the judgment appealed is reversed and the cause is remanded for a new trial not inconsistent herewith.
Reversed and remanded.
PEARSON and CARROLL, CHAS., JJ., concur.
NOTES
[1] The trial court commented: "If a man can be qualified, he is qualified."