437 F.2d 817
 Richard L. BITTON, as Administrator of the Estates of Charles L. Bitton, Sr., and Joyce Fae Bitton, his wife, both deceased, and as Guardian ad Litem for Joyce Darlene Bitton, Charles Lamar Bitton and Roger Lamar Bitton, minors, Appellant,
v.
INTERNATIONAL TRANSPORT, INC., and Gene W. Peters, R. D. Robinson and Robinson Trucking, Inc., Appellees.
 No. 25110.
 United States Court of Appeals, Ninth Circuit.
 December 24, 1970.
 
 Charles T. Schillberg (argued), Ken Earl, Moses Lake, Wash., for appellant.
 A. A. Lundin (argued), of Randall & Danskin, Spokane, Wash., for appellees.
 Before HAMLEY and WRIGHT, Circuit Judges, and GOODWIN, District Judge.*
 HAMLEY, Circuit Judge:
 
 
 1
 In this wrongful death diversity action arising in the Eastern District of Washington, the jury rendered a verdict for the named defendants and judgment was entered thereon. On this appeal plaintiff raises various questions of evidence and trial procedure which we will discuss seriatim.
 
 
 2
 The cause arose out of a traffic accident which occurred about 4:45 a. m. on May 19, 1968, on U. S. Highway 10 near Ritzville, in eastern Washington. At this point the highway runs in a generally east-west direction. Looking eastward, the highway curves gently to the right with a gradually rising grade.
 
 
 3
 Defendant Gene W. Peters, traveling east, was driving a twenty-foot White Freightline tractor which defendant, International Transport, Inc. (International), had leased (with driver) from defendant Robinson Trucking, Inc. The tractor was pulling a forty-foot Freuhauf trailer owned by International. The decedents, Charles L. Bitton, Sr., and his wife, Joyce, were driving west in a Ford Ranchero. The tractor and Ranchero came into violent collision, as a result of which the Bittons died instantly. The truck driver, Peters, was the only surviving eyewitness to the accident.
 
 
 4
 The main factual issue at the trial was whether the point of impact between the vehicles occurred on the Bittons' (north) side of the highway or on Peters' (south) side of the highway. The testimony of the truck driver and a state trooper provided substantial support for defendants' contention that the accident occurred entirely upon the south side of the highway. Plaintiff's evidence tending to show that the accident occurred on the north side of the highway consisted mainly of photographs showing gouge marks in the asphalt surface on that side of the highway, and expert testimony interpreting those photographs and analyzing the gouges. This expert testimony was given by Dr. William C. Kieling and Mr. Charles V. Smith.[1]
 
 
 5
 At the close of plaintiff's evidence, defendants moved to strike the testimony of Dr. Kieling and Mr. Smith. They so moved on the ground that the opinions expressed by these experts were based upon the faulty factual premise that the gouge marks on the highway surface were made at the time of the collision. Defendants urged that the evidence conclusively shows that the gouge marks were not present immediately after the accident and must have been made some six hours later when the disabled tractor was hauled away.
 
 
 6
 The trial court declined to strike all of the testimony of Dr. Kieling and Mr. Smith. But the court did strike their ultimate expressions of opinion to the effect that the collision occurred on the north side of the highway. It did so on the ground that such opinions were based upon the assumption that the gouge marks were made at the time of the collision, which assumption was not borne out by the evidence.
 
 
 7
 Plaintiff argues here that the trial court erred in striking these expressions of opinion by plaintiff's two expert witnesses.
 
 
 8
 It is not questioned that Dr. Kieling and Mr. Smith were qualified experts concerning the significance to be attached to highway markings such as the gouges in question. Nor is it disputed on this appeal that, although the opinions they expressed went to the ultimate issue to be decided by the jury, the subject matter was appropriate for expert testimony. See Knight v. Borgan, 52 Wash.2d 219, 324 P.2d 797 (1958). The narrow question which the trial court had to decide was whether the premise upon which the experts based their opinions, namely, that the gouge marks were made at the time of the collision, amounted to a factually unsupported hypothesis. If it did, the opinions were properly stricken. See Mercer v. Dept. of Labor and Industries, 74 Wash.2d 96, 99, 442 P.2d 1000, 1002 (1968).
 
 
 9
 The easterly end of the gouge mark was about three and a half feet north of the center line of the highway. The westerly end was about six inches from where the end of the left front axle of the tractor came to rest off the highway on the south side. The left front wheel was torn off as a result of the impact. The gouge mark was approximately twenty-two feet eight inches long, and followed an irregular course.
 
 
 10
 Plaintiff's contention was that the gouge was caused by the left front steering knuckle of the tractor, from which the wheel had been torn. There was supporting evidence sufficient to place that theory before the jury. But the critical question is whether the knuckle caused this gouge at the time of the accident, or six hours later when the disabled tractor was towed away.
 
 
 11
 Photographs taken shortly after the accident, plainly showing the part of the north lane where the gouge was later discovered, reveal no such mark. When these photographs were taken the north lane was free and clear of debris which might have hidden such a mark. Plaintiff refers to the "long" shadows at the time these pictures were taken, and to testimony that, at that time, the camera used was not in the most accurate focus. We have examined these photographs with care and find them fairly sharp and entirely adequate to depict highway marks as pronounced as the gouge in question. We agree with the court that if the gouge marks had been made at the time of the impact they would have shown in these photographs.
 
 
 12
 In addition, there were seven witnesses who had been at the site after the accident and before the tractor and trailer were towed away, and none testified to seeing the gouge marks. Moreover, a state trooper testified that while the tractor was being removed, the wheelless left axle dropped to the road surface and gouged the pavement. He could not identify the full course of the mark then made as he was directing traffic.[2] The gouge marks first showed up in photographs made after the vehicles had been removed some six hours after the collision.[3]
 
 
 13
 In addition, the testimony of Peters, the only eyewitness, that his rig had not crossed the center line and that he had aggressively applied his brakes when the Ranchero crossed into his lane, was corroborated by physical evidence consisting of the tractor's skid marks which were entirely south of the center line.
 
 
 14
 In passing upon the admissibility of opinion evidence it is the duty of the trial court to see that the jury is not likely to be misled. See Hill v. C. & E. Construction Co., Inc., 59 Wash.2d 743, 745, 370 P.2d 255, 256 (1962). In view of the considerations discussed above, we hold that the court properly performed this duty and did not abuse its discretion in striking the ultimate opinions expressed by Dr. Kieling and Mr. Smith to the effect that the initial impact occurred on the north side of the highway.
 
 
 15
 Plaintiff next argues that the trial court erred in denying his request that he be allowed to disassemble the left front wheel assembly of the tractor and offer the steering knuckle into evidence.
 
 
 16
 At trial plaintiff's request was as follows:
 
 
 17
 "We were wondering, your Honor, if it is possible to remove the ball joint from that axle and bring it up in connection with some other testimony this morning."
 
 
 18
 The reasons plaintiff gave for wishing to dismantle the exhibit, which was composed of the front end of the truck, were: (1) the experts could use it to illustrate their testimony and, (2) the jury could see the marks and scratches on the ball joint.
 
 
 19
 The jury was allowed to view the steering knuckle, photographs of it were received in evidence, and a duplicate steering knuckle was also received in evidence. In our view the trial court did not abuse its discretion in denying the described request.
 
 
 20
 Plaintiff argues that the trial court erred in receiving, over objection, the testimony of Dr. Bruce Ettling, contending that he was not qualified to give an expert opinion.[4]
 
 
 21
 Dr. Ettling is the Assistant Section Head in Organic Chemistry at the College of Engineering, Washington State University. His testimony on direct examination was based upon an analysis of the depth of the gouge at various places, and on the marks and pits made when small stones were plucked from the pavement as the object that made the mark scraped along the road. He illustrated these marks and pits with photographs taken through a binocular microscope. Dr. Ettling's analysis of the gouge led him to the conclusion that the object that made the mark was moving from a point where the truck came to rest after the collision, out across the highway, to the terminus of the gouge in the north lane. This would be in a direction opposite that assumed by plaintiff's experts, and would tend to show that the mark was made when the truck was removed after the accident.
 
 
 22
 Dr. Ettling was qualified as an expert on the basis of his Ph.D. in chemistry, previous analytical work for law enforcement agencies, and education in the fields of physics, chemistry and geology. On voir dire, it was established that Dr. Ettling had no experience with, or particular knowledge of, asphalt, and that he had not previously had occasion to determine the direction of an object moving on an asphalt highway upon an analysis of the marks it produced. Nor had he any particular training in photomicrography, although he did have some experience in that field.
 
 
 23
 The determination of whether a witness has the qualifications entitling him to express an expert opinion on a particular matter calls for the exercise of discretion by the trial court. Nordstrom v. White Metal Rolling and Stamping Corp., 75 Wash.2d 629, 642, 453 P.2d 619, 627 (1969). While Dr. Ettling lacked training and experience in the particulars mentioned, there was reason to believe that his general scientific skills and techniques were sufficient to enable him to reach reliable conclusions with regard to the direction of the movement of the object that made the gouge. His lack of specific experience goes to weight, not admissibility. Nordstrom, supra, 75 Wash.2d at 635, 453 P.2d at 624; Reynolds Metals Co. v. Lampert, 324 F.2d 465, 467 (9th Cir. 1963).
 
 
 24
 We are convinced that the trial court did not abuse its discretion in holding that Dr. Ettling had the education and skills necessary to conduct the scientific inquiry he undertook, and in overruling the objection to the admission of his opinion testimony.
 
 
 25
 Finally, plaintiff urges that it was error to allow the introduction of the photographs of the gouge which Dr. Ettling took through a microscope. Dr. Ettling testified that the photographs accurately depicted what he observed through the microscope. The plaintiff's voir dire disclosed no fatal infirmity in this statement. The photographs therefore were admissible. Toftoy v. Ocean Shores Properties, Inc., 71 Wash.2d 833, 836, 431 P.2d 212, 214-215 (1967); Mason v. Bon Marche Corp., 64 Wash.2d 177, 178, 390 P.2d 997, 998 (1964).
 
 
 26
 Affirmed.
 
 
 
 Notes:
 
 
 *
 The Honorable Alfred T. Goodwin, United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 On direct examination Dr. Kieling responded that he had an opinion as to the lane in which the collision occurred. He was then asked, "Is that particular opinion based upon the fact that sometime after the accident there was a gouge mark in the west lane of travel, somewhat to the east of where the tractor came to rest?" Dr. Kieling responded, "That would be a portion of my conclusion."
 It is true that Dr. Kieling was apparently willing to adhere to his opinion even had there been no gouge mark. He testified that, without any gouge mark at all, "It is a reasonable position" to conclude that the impact happened north of the center line. But, analyzing his whole testimony, it is evident that there was no substantial factual premise for such a position other than calculations which could be derived from the gouge marks.
 On direct examination, Smith was asked the reason for his having placed the point of impact in the Bittons' lane of travel. His response was, in part, "The first contact of the ball joint in the pavement, which is some four feet over the center line * * *." On cross-examination, Smith was asked whether he decided the gouge marked the point of impact and assumed it identified the movement of the truck after the collision. He responded, "Well, you don't have to assume it when you see it right there in the pavement * * *."
 
 
 [2]
 W. O. Alexander, who removed the tractor with a large tow truck, testified that he did not make any mark on the highway and, particularly did not make the gouge marks in question. On cross-examination, however, Alexander admitted making a statement prior to trial in which he had stated that the axle dragged some along the highway as the tractor was towed. On redirect, Alexander stated that while the axle dragged some on the highway, it did not mark the highway
 
 
 [3]
 Plaintiff argues that since the left front wheel of the tractor came off as the result of the impact, the left steering knuckle must have dropped to the highway surface at that time. He points out that, under the evidence, the moving truck exerted a weight on his steering knuckle of over three thousand pounds, and therefore the dragging knuckle must have gouged the asphalt surface at that time. Accordingly, he urges, if the truck remained in the south lane, the whole twenty-eight foot gouge should be in that lane. Yet no gouge marks traceable to the steering knuckle are to be found in the south lane, except for the westerly end of the gouge mark in question
 However, persuasive this argument might be under other circumstances, it is completely demolished by the fact that photographs taken after the accident, and before the tractor was removed, do not show the mark upon which plaintiff's theory depends. The only explanation must be that the way in which the impact occurred must have held the steering knuckle off of the highway surface until the vehicles came to rest.
 
 
 [4]
 Plaintiff did not favor us with references in the record where his objections were made and ruled upon. However, we find that after the voir dire of Dr. Ettling as to his qualifications, plaintiff objected that the witness was not qualified to: (1) determine the characteristics of asphalt, (2) determine the effect upon asphalt of objects moving across it, (3) take photographs, and (4) make a chemical analysis of asphalt samples for the purpose of determining the direction of a physical body in making the gouge mark here in question. The objection was overruled