[No. 3381-2.   Division Two.   December 18, 1979.]

THE STATE OF WASHINGTON, *Respondent*, v. PHILLIP S. BURT, *Appellant*.

*John H. McGilliard, Public Defender,* for appellant.

*C. Danny Clem, Prosecuting Attorney,* and *Christian C. Casad, Deputy,* for respondent.

PETRIE, J.—Phillip S. Burt appeals from his conviction of negligent homicide. We affirm.

On September 21, 1977, at approximately 2 a.m., a 1-car accident occurred at the dead end of Marine Drive in Bremerton. Donald Moyer was found pinned in the passenger seat, and was pronounced dead at the scene. One of the first witnesses to reach the site of the accident was Virginia Schutt. As Mrs. Schutt approached the scene she saw a man getting up off the ground. He staggered and then walked around to the other side of the overturned vehicle. The man was concerned about getting another person out of the car, but when Mrs. Schutt told him that help was on the way he suddenly ran off. Mrs. Schutt noticed blood on his neck and stated that the man was holding his arm.

That morning, between 5 and 5:30, defendant appeared at Dr. Diefendorf's house on Marine Drive, very close to the scene of the accident. The physician noticed that Burt had a lot of blood on his face and shirt, and that he had a broken right arm. Dr. Diefendorf put a splint on his broken arm and tended to a mild laceration on his ear.

On September 28, 1977, Burt was charged with the crime of negligent homicide. A few days later he voluntarily went to the police station to pick up his vehicle title, registration, and a bill of sale which the police had found in the wrecked car. While at the station, Officer Pratt, who had been investigating the accident, asked defendant whether he was aware of his *Miranda* rights because he wanted to ask him a question or two. He indicated that he knew his rights, but that he had been told by his attorney not to talk about the incident. Officer Pratt then stated that he was just curious as to whether Burt had crawled out of the car or had been thrown out. Burt answered that the first thing he remembered was that he was on the ground next to the car. After a CrR 3.5 hearing the trial court ruled that the defendant was not in custody when he answered the question, and also that the statement to Officer Pratt was voluntary.

During the trial, Officer Pratt was also called as an expert witness to express his opinion as to the speed of the vehicle

based upon skid marks left at the scene. The court ruled that his opinion was admissible over a defense objection that the skid tests performed by Officer Pratt were not done under conditions substantially similar to those existing at the time of the accident. He calculated the speed of the vehicle to be a minimum of 57.5 miles per hour. The posted speed limit on Marine Drive was 25 miles per hour.

Another police officer, Robert Peck, was called by the State because he had seen defendant drinking with Donald Moyer at a bar between 10 p.m. and 1 a.m. the night of the accident. During his testimony the officer made a reference to warrants:

Q. . . . Can you tell us when you first saw Mr. Burt, the defendant?

A. Upon arriving, I glanced at Mr. Burt. We had a couple of warrants for an individual by that name. At that time I didn't quite recognize him. The last time I had seen him his hair was quite longer and his clothes were not of what he was wearing that night.

Defendant moved for a mistrial, but the court ruled that the reference to warrants was inadvertent and not sufficiently prejudicial for a mistrial.

At the end of the trial, defendant took exception to instruction No. 12 which reads:

In a prosecution for negligent homicide, the unlawful operation of the vehicle in excess of the maximum lawful speed at the point of operation gives rise to a presumption that the vehicle was operated in a reckless manner.

This presumption is not binding upon you and it is for you to determine what weight, if any, such presumption is to be given.

This instruction was based on RCW 46.61.465.[1] The jury specifically found that defendant had operated the vehicle in a reckless manner.

---

[1]RCW 46.61.465 reads:

"The unlawful operation of a vehicle in excess of the maximum lawful speeds provided in this chapter at the point of operation and under the circumstances described shall be prima facie evidence of the operation of a motor vehicle in a reckless manner by the operator thereof."

Defendant makes five assignments of error. He first argues that the trial court erred in failing to suppress the statement given to Officer Pratt at the police station. He asserts that it was a custodial interrogation conducted without prior advice of rights, and that the officer exerted improper influence over him, thereby making the statement involuntary. We disagree.

*Miranda* warnings are required whenever there is a custodial interrogation. *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). Custodial interrogation was defined in *Miranda* to mean, "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona, supra* at 444. In the case at bench, defendant voluntarily came to the police station to pick up some documents, he stayed only a few minutes and then left the police station without hinderance. There was no evidence that he was either required to come to the station or stay for any length of time. The mere fact that questioning is carried on at a police station does not necessarily make it custodial interrogation. *Oregon v. Mathiason,* 429 U.S. 492, 50 L. Ed. 2d 714, 97 S. Ct. 711 (1977); *State v. Green,* 91 Wn.2d 431, 588 P.2d 1370 (1979).

Alternatively, defendant contends that should the court find the questioning to be a noncustodial interrogation then Officer Pratt's characterization of the question as being one of "more curiosity than anything" would constitute a deception or inducement that would make the statement involuntary. However, after a careful examination of the record, we hold that Officer Pratt's behavior did not "overbear petitioner's will to resist and bring about confessions not freely self–determined . . ." *Rogers v. Richmond,* 365 U.S. 534, 544, 5 L. Ed. 2d 760, 81 S. Ct. 735 (1961); *State v. Gilcrist,* 91 Wn.2d 603, 607, 590 P.2d 809 (1979).

Second, it is contended that the trial court erred in allowing the expert testimony regarding the speed of the vehicle. Initially, we note that Washington courts have

allowed expert opinion regarding the estimated speed of a motor vehicle based on the length of the skid marks. *Knight v. Borgan,* 52 Wn.2d 219, 324 P.2d 797 (1958); *Talley v. Fournier,* 3 Wn. App. 808, 479 P.2d 96 (1970). However, defendant alleges that the results of the skid tests should not have been allowed in this case because there were many critical dissimilarities between the automobile used for the skid tests and the one involved in the accident, and also because the conditions at the time of the skid tests varied from those at the time of the accident.

Generally, conditions under which tests or experiments are made must be substantially similar to those existing in the case on trial. *State v. McMurray,* 47 Wn.2d 128, 286 P.2d 684 (1955). It is firmly established, however, that trial courts have wide discretion in determining admissibility of evidence as to tests, and will only be reversed for an abuse of discretion. *Bichl v. Poinier,* 71 Wn.2d 492, 497, 429 P.2d 228 (1967); *Knight v. Borgan, supra; State v. McMurray, supra.*

In the present case, Officer Pratt originally testified that the minimum speed of the vehicle was 71.6 miles per hour. During cross-examination the defense suggested that this calculation was inaccurate because of many factors not considered as variables between the subject vehicle and the test vehicle, such as: type of tires, amount of tread on the tires, temperature of tires, tire pressure, weight of vehicles, condition of brakes, temperature of pavement, weather, and alteration of the original skid marks due to evaporation and erasure.

On redirect, however, after considering these factors, Pratt stated that they would have very little effect on his calculation. He went on to say that even if he gave the defendant every possible break in light of these variations, it could only reduce his opinion of the estimated minimum speed to 57.5 miles per hour. Furthermore, no expert testimony was offered by defendant to contradict the statement of the State's witness that these dissimilarities could have little effect on his analysis. We cannot say that the court

abused its discretion in admitting the evidence regarding the tests.

Defendant's third assignment of error asserts that he was denied his right to a fair trial because of the statement by Officer Peck that, "We had a couple of warrants for an individual by that name." Defendant contends that the statement implied, at a minimum, prior contacts with the police in a criminal status, and consequently tainted the jury.

Recently in *State v. Kraus,* 21 Wn. App. 388, 584 P.2d 946 (1978), a State's witness testified that he had seen a "parolee" photograph of the defendant prior to having identified him in a lineup. The court, however, decided that the trial court did not abuse its discretion in denying a motion for a mistrial. The test is whether the inadvertent remark, viewed against the backdrop of all the evidence, so tainted the entire proceedings that the accused did not have a fair trial. *State v. Nettleton,* 65 Wn.2d 878, 880, 400 P.2d 301 (1965).

In the present case, the remark did not positively identify the defendant as the individual named on the warrants, and there was no other evidence during the trial of past crimes. The trial court was in the best position to evaluate the effect of the remark on the jury. The evidence of defendant's guilt is overwhelming. Therefore, viewed against the backdrop of all the evidence, we hold that the trial court did not abuse its discretion in concluding that the inadvertent remark did not prevent defendant from having a fair trial.

The fourth assignment of error claims that the presumption in instruction No. 12 does not meet the standards for determining the constitutional validity of an evidentiary presumption as set forth in *State v. Roberts,* 88 Wn.2d 337, 562 P.2d 1259 (1977). We disagree.

The threefold *Roberts* test is as follows:

(1) a presumption may not shift the ultimate burden of persuasion to a defendant, although it may operate to shift the initial burden of producing evidence as to an

element of the crime charged; (2) a presumption may only be used to establish an element of a criminal offense when it is established that the fact presumed follows from the facts proven in support thereof beyond a reasonable doubt; (3) the jury must be informed that it is permitted, but not obligated, to accept the presumption, even if unrefuted.

*State v. Bishop,* 90 Wn.2d 185, 188, 580 P.2d 259 (1978).

■ First, we must consider whether the instruction shifted the ultimate burden of persuasion. A presumption may shift the burden of producing some evidence onto the defendant, but the ultimate burden of persuasion must remain with the prosecution. *Mullaney v. Wilbur,* 421 U.S. 684, 702–03 n.31, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975); *State v. Kroll,* 87 Wn.2d 829, 558 P.2d 173 (1976); *State v. Roberts, supra* at 340. In *State v. Bishop, supra* at 188, the court distinguished the burden of production from the burden of persuasion:

While shifting the burden of production to the defendant requires him to present some evidence with respect to the fact in issue, shifting the burden of persuasion requires him to affirmatively establish the fact in issue. *Mullaney v. Wilbur,* 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975); Ashford & Risinger, *Presumption, Assumption and Due Process in Criminal Case: A Theoretical Overview,* 79 Yale L.J. 165 (1969).

An examination of two recent cases, *Sandstrom v. Montana,* 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979) and *County Court v. Allen,* 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213 (1979), indicates that the nature of the presumption often determines whether the burden of persuasion, the burden of production, or neither is shifted onto the defendant. Three types of presumptions are discussed in the two cases: (1) an entirely permissive presumption "which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one". *County Court v. Allen, supra* at 157; (2) a mandatory presumption which "tells the trier that he or they must find the elemental fact upon proof of the basic

fact, at least unless the defendant has come forward with some evidence to rebut the presumed connection between the two facts." *County Court,* at 157; (3) and the conclusive presumption which a jury could well interpret "not technically as a presumption at all, but rather as an irrebuttable direction by the court to find intent [the elemental fact] once convinced of the facts triggering the presumption." *Sandstrom v. Montana, supra* at 517.

Only the latter two presumptions are capable of shifting the burden of persuasion, and usually the mandatory presumption only shifts the burden of producing some evidence. *County Court v. Allen, supra.* The permissive presumption "places no burden of any kind on the defendant." *County Court v. Allen, supra.*

In the case at bench, the last sentence of the instruction states that the presumption "is not binding" upon the jury, and that the jury can determine "what weight, if any," to give to it. Therefore, it allows but does not require the fact finder to infer the elemental fact from proof of the basic one. It is clear that a reasonable juror could only interpret this presumption as permissive. Consequently, the instruction did not shift the burden of persuasion.

█ The second prong of the *Roberts* test requires that the fact presumed must follow from the facts proven in support thereof beyond a reasonable doubt. In *State v. Bauer,* 92 Wn.2d 162, 167, 595 P.2d 544 (1979) the court stated:

> In determining whether the presumption has such a factual basis, a court may look to common experience and knowledge as well as a broad range of empirical data. *State v. Roberts, supra; State v. Alcantara* [87 Wn.2d 393, 552 P.2d 1049 (1976)], *supra* at 398–99. *We may also look to the facts proven in the particular case to determine whether the presumed fact follows beyond a reasonable doubt from the evidence actually introduced. State v. Alcantara, supra.*

(Italics ours.)

In this case, the evidence introduced regarding the speed of the vehicle indicates that defendant was driving at a very

high speed. Officer Pratt, testifying on the basis of his skid mark analysis, opined that the minimum speed at which the defendant was traveling was 57.5 miles per hour. This opinion was based solely on the skid marks left on the highway, and did not consider the fact that the vehicle continued into gravel and grass, struck a large boulder moving it almost 5 feet, and then still had enough velocity to flip over.

The above evidence plus the fact that the accident occurred in a 25–mile–per–hour zone which had signs warning of the dead end leads us to the conclusion that in this case the proven fact (excessive speed) establishes the presumed fact (recklessness) beyond a reasonable doubt.

As for the third prong, we are satisfied that the jury was properly informed by the second paragraph of instruction No. 12 that it was permitted, but not obligated, to accept the presumption, even if unrefuted.

Although we find this evidentiary presumption to be valid in this particular case, we can foresee a different factual situation in which this same instruction would be unable to meet the second prong of the *Roberts* test. In applying this test, trial courts will undoubtedly examine the facts of each case carefully, and unless they are thoroughly convinced of the wisdom and necessity of presenting an evidentiary presumption, it will not be given.

■ Finally, defendant contends that there was insufficient evidence to prove that he was in fact the driver of the vehicle. The circumstantial evidence, however, clearly points to him as the driver. Inferentially, he admitted to Officer Pratt that he was in the car when it overturned; he owned the car; he ran from the scene in an injured state; and Donald Moyer, the decedent and only other person found at the accident site, was pinned on the passenger side. We are convinced that there was substantial evidence to support the jury's verdict. *State v. Green,* 91 Wn.2d 431, 588 P.2d 1370 (1979); *State v. Luoma,* 88 Wn.2d 28, 558 P.2d 756 (1977).

The judgment of the trial court is affirmed.

PEARSON, C.J., and REED, J., concur.