McDONALD, Plaintiff-Appellant, v. KELLY, Defendant-Appellee.

Ohio Appeals, Second District, Franklin County.

No. 5256.   Decided June 21, 1955.

Carl H. Valentine, Columbus, for plaintiff-appellant.
Jenkins, Williams, Wendt, Murray & Deeg, Columbus, for defendant-appellee.

## OPINION

By MILLER, PJ.

This is an appeal on questions of law from a judgment of the Common Pleas Court of Franklin County, entered on a verdict returned in favor of the defendant.

This is an action for damages growing out of an automobile collision which occurred at about midnight on November 16, 1951, at the intersection of West Mound Street and Wayne Avenue in the City of Columbus. West Mound Street, which is a "through highway," extends in an easterly and westerly direction, and Wayne Avenue is a non-favored highway extending in a northerly and southerly direction, intersecting West Mound Street at right angles.

The plaintiff in his petition charged the defendant with failure to stop before entering the intersection, with failure to yield the right-of-way to plaintiff, with traveling at a speed greater than was reasonable or proper, and at a greater speed than would permit him to bring his automobile to a stop within the assured clear distance ahead. The defendant's answer was in the nature of a general denial.

Plaintiff was driving his automobile in an easterly direction on Mound Street and defendant was driving his automobile in a northerly direction on Wayne Avenue. The collision occurred in the southern part of the intersection, the left front of defendant's automobile coming into contact with the right front of plaintiff's automobile. After the impact the defendant's automobile came to rest at the southeast corner of the intersection; the plaintiff's automobile continued on eastward on Mound Street, coming to rest on the sidewalk on the north side of Mound Street, a distance of some 75 to 100 feet east of the place of collision.

The defendant testified that in approaching Mound Street he had stopped in the observance of a stop sign before entering the intersection; that his automobile was in low gear and he was traveling between 8 and 10 miles an hour. There is a conflict in the evidence as to whether the defendant stopped before entering the intersection. The defendant testified that a moment before the collision he saw the reflection of the lights on the plaintiff's automobile; that he looked to his left, saw the plaintiff's automobile and applied the brakes, and then the collision occurred. The defendant testified that the front end of his automobile was approximately three feet north of the south curb line of Mound Street when the collision occurred.

The plaintiff testified that he was traveling between 20 and 25 miles per hour; that he did not look to the south as he approached or entered the intersection; that he did not see the defendant's automobile until the moment of the impact; that he did not apply his brakes either before or after the collision. The plaintiff claims that his failure to apply the brakes after the collision was due to injuries sustained to his knee as a result of the collision.

The appellant claims the court erred in the admission of evidence; in giving a special instruction requested by the defendant, and in the general charge; that the judgment is not sustained by sufficient evidence and is contrary to law.

There was evidence admitted, over the objection of counsel for the plaintiff, that there was a sign on the south side of Mound Street, a short distance west of Wayne Avenue, with the word "slow" printed thereon in large letters. No attempt was made to show that the sign was erected under public authority, or that it was of the kind or character authorized by law.

The evidence relative to the existence of a "slow" sign on Mound Street was properly admitted. In the absence of proof to the contrary it is presumed that such sign directing traffic on Mound Street was erected by lawful authority. The warning effect of the sign is in no wise impaired by the failure to show affirmatively that the sign was erected under legal authority. **Cook v. Hunter, 52 Oh Ap 354, 3 N. E.** (2d) 680. The evidence with respect to the existence of the sign was

admissible in determining whether plaintiff in driving on Mound Street was in the exercise of ordinary care. In Cook v. Hunter, supra, the court, on pages 357 and 358, said:

"It has always been permissible to show all the conditions, facts and circumstances surrounding the location of a collision of this character, in determining whether the respective parties, in view of these conditions, facts and circumstances, acted as ordinarily prudent persons would act under like conditions, facts and circumstances, and were therefore guilty of negligence or contributory negligence, directly and proximately producing the collision and injury, although a criminal conviction could not be based upon a failure to observe a stop sign or traffic light not erected and maintained by authority of law. The warning effect of the traffic signal erected at the intersection of the roads where the collision occurred which gives rise to the instant action, was in no way lessened or increased by the obtaining or failing to obtain the consent and approval of the highway director to erect and maintain the same."

The plaintiff was driving on a "through highway" and, if proceeding in a lawful manner, had the "right of way." Sec. 4511.43 R. C. "Right of way means the right to proceed uninterruptedly in a lawful manner," etc. Sec. 4511.01 (RR), R. C. Much of the evidence presented was on the issue as to whether plaintiff was proceeding in a lawful manner. The failure of plaintiff to look to the south as he approached the intersection; his failure to see defendant's automobile until the instant of the impact; the failure to apply the brakes either before or after the collision; the speed at which he was driving; the condition of the street; the distance his automobile traveled after the collision, were all facts and circumstances admitted to determine whether plaintiff was negligent.

The charges, general and special, must be examined as they apply to the facts developed. This accident occurred after 11:00 o'clock at night, the streets were a little wet, but there is no showing that either automobile was deflected in its movement by reason of this condition of the street; there was no traffic other than the two automobiles. The plaintiff testified that he was traveling at a rate of speed of 20 to 25 miles per hour. This is not disputed except by possible inference from other facts appearing. The defendant testified that he had proceeded into Mound Street but three feet when the collision occurred. Plaintiff did not apply his brakes before or after the collision, but notwithstanding, came to a stop at a distance of 75 to 100 feet from the place of impact. It is undisputed that he suffered a broken right kneecap which could have accounted for his failure to apply the brakes after the collision. Of course, such action on his part would have had no effect to prevent the collision. There is no evidence whatever, direct, or inferential, that the plaintiff did not maintain a lookout ahead of him in the street in which he was moving. A presumption must be therefore indulged that he did so act.

Upon the subject of the failure of plaintiff to observe a lookout the following is the only testimony. Cross-examination of plaintiff:

"Q. All right, now, I will ask you whether or not at any time as

you approached this intersection, did you look to the south on Wayne Avenue?

"A. I couldn't look to the south on Wayne, Sir, because the accident happened at the corner at the intersection; otherwise, he was going straight through, he wasn't taking the curb.

"Q. I ask you, Mr. McDonald, if you, as you approached the intersection of Wayne Avenue, did you look to the south?

"A. Sir, I couldn't look at the south, because the accident happened.

"Q. Just a minute, please, I am asking you whether or not you did look to the south?

"THE COURT. Answer that yes or no.

"THE WITNESS. No."

The Court at the request of defendant gave the following special charge before argument:

"I charge you, members of the jury, that in determining whether or not the plaintiff, William R. McDonald, was operating his automobile at a legal and lawful rate of speed as that term will hereafter be defined to you, you may consider, in addition to the estimates of speed as given by witnesses, the evidence of the amount of physical damage inflicted to the automobiles involved in the collision, and the nature of the damage, the distance both automobiles traveled after the collision, the fact that traffic approaching the intersection was or was not obscured from view, whether or not the plaintiff maintained a proper lookout, the condition of the weather, and of the roadway, at the time of the accident, the presence of or lack of curves at or near the intersection where the accident occurred, and any other conditions then and there existing."

In the general charge the Court, after correctly charging that plaintiff had the right of way if he was operating his automobile in a lawful manner and the terms and provisions of the speed statute controlling, then said:

"But it is for the jury to determine in this case whether the plaintiff was operating at a lawful speed; also was he operating in a manner that an ordinarily prudent person would operate under the same or similar circumstances."

It will be noted that the Court did not enjoin upon the jury the necessity that it first determine that plaintiff was operating his automobile at an unlawful rate of speed when the collision occurred before he lost his preferential right of way. The jury could well have interpreted the charge to mean that it was required to pass upon both propositions, namely, the lawfulness of the speed of plantiff's automobile and whether or not he was exercising due care under all the circumstances as it reflected upon the issue of the violation of the speed statute. Then, without making any differentiation, the Court continued:

"It is the duty of every driver to observe ordinary care in the operation of his automobile with respect to keeping a lookout, a proper lookout; and what is a proper lookout? A proper lookout is such a lookout as an ordinarily prudent person would exercise under the same or similar circumstances. If this plaintiff was operating his automobile in a lawful manner, then any interference by the defendant with that operation was negligence."

The foregoing sets forth substantially what the Court said to the jury as defining the obligation of the plaintiff at the time of the collision.

In the judgment of the majority, the jury applying only the test of ordinary care to the conduct of the plaintiff could have found that his failure to look to the south into Wayne Avenue as he approached the intersection was, in connection with the other facts appearing, unlawful conduct on his part and some proof of excessive speed which would prevent his recovery. This in our judgment is the fault which our Supreme Court undertook to correct in its pronouncement in **Morris v. Bloomgren, 127 Oh St 147,** in which it expressly overruled,

(Second paragraph of the syllabus):

"The expressions and implications contained in the cases of **Heidle v. Baldwin, 118 Oh St 375,** and **Geo. Ast Candy Co. v. Kling, 121 Oh St 362,** by denying the vehicle approaching from the right its statutory privilege of proceeding uninterruptedly if it proceeds in a lawful manner, and by placing the drivers of both vehicles upon an equal plane in approaching an intersection and relegating both to the rules of care existing at common law, * * *."

It is well known by the bar and the courts that Judge Jones, who wrote the opinion in Morris v. Bloomgren, had theretofore, unsuccessfully, maintained his contention as to the law, in dissents to the majority opinions in Heidle v. Baldwin, supra, and Geo. Ast Candy Co. v. Kling, supra. In Candy Co. v. Kling, Judge Jones said:

"Under these two cognate statutes (§§6310-28 and **6310-28-A GC)** the defendant's * * * truck, if proceeding in a lawful manner, had the unrestricted right of way upon the main highway as against a vehicle approaching from its left. The vice contained in the syllabus lies in the statement that although the right of way was yielded to the driver of the * * * truck, by the statute, he was nevertheless bound to exercise the common-law duty of ordinary care. The application of that rule to the instant case relegates the driver of the * * * truck to the same duties as would arise if no statute existed; it deprives him of the advantage of the statute giving him the uninterrupted right of way; it permits the plaintiff to violate the law with impunity, and places both drivers on an equal plane by requiring ordinary care where their paths converge; it emasculates the statute, and requires the defendant, in such a situation, to exercise ordinary care under the rules of the common law, although he may be driving on the main highway in a lawful manner."

The speed statute, §4511.21 R. C., in our opinion, contemplates that an excessive rate of speed may not be shown by proof of the failure to exercise the common-law obligation of maintaining a lookout into a street from which the nonpreferred driver of an automobile is moving. The statute provides that due regard shall be given to the "traffic, surface, and width of the street or highway and any other conditions." The "any other conditions" means physical conditions in or connected with the highway.

Appellee relies in part on **Esterly v. Arc Engraving Co., 59 Oh Ap 207**, and **Estridge v. The Cincinnati Street Railway Co., 44 Abs 33**, in both of which cases the writer of the opinions said that a proper lookout under the circumstances had some reference to speed. As we read these opinions these statements were not necessary to the judgment of these Appellate Courts.

In the Estridge case reliance is put in the cited cases of Neumann v. Apter (Conn.), 21 A. L. R. 988; Webber v. Park Auto Transportation Co. (Wash.), 47 A. L. R. 614, and 5 Am. Jur. 667, for the statement that ordinary care is the minimum requirement in most, if not all, situations. All of these citations were from cases and states where the interpretation of their speed statutes was in accord with that of Heidle v. Baldwin, supra, and Candy Co. v. Kling, supra, and were decided before Morris v. Bloomgren.

Morris v. Bloomgren, 89 A. L. R. 838, is annotated and it is there pointed out:

"Although rights of way have been given by statutes and ordinances to certain travelers, as, for example, to those approaching an intersection from the right, these have been construed to give only a relative right, dependent upon the particular circumstances, such as speed, and the distance of the vehicles from the intersection. This has worked out unsatisfactorily in its practical application. The elements of speculation as to speed, distance, etc., have rendered the traveler's insecurity almost, if not quite, as great as if no regulations existed. What is required is some further assurance that a right of way does in fact exist and will be respected. Apparently no case prior to the reported case (Morris v. Bloomgren [Ohio] ante, 831) has adopted a construction of these regulations making the right of way an absolute one."

But continuing, it is said:

"That the 'absolute' right of way upon the driver of the vehicle approaching from the right, is qualified by the requirement that, in proceeding uninterruptedly, he must proceed in a lawful manner, as to speed, distance," etc.

There is a continuation of the annotation to Morris v. Bloomgren, 89 A. L. R. 839, in 137 A. L. R. 1497, which notes that the weight of authority is that the right of way is only relative and is against the construction in Morris v. Bloomgren which this Court is bound to follow.

The applicable principle of law as to the obligation of a driver of an automobile who has the right of way to maintain a lookout under the speed statute and the right of way statute is found in the fifth paragraph of the syllabus of Morris v. Bloomgren which says:

"The driver of a vehicle lawfully approaching from the right has the right to assume that the driver of the vehicle approaching from the left will obey the law by yielding the right of way. If, however, the former, just as he is approaching or entering the intersection, discovers that the latter is not yielding the right of way and has thereby placed himself in a perilous situation, it becomes the duty of the former to use ordinary care not to injure the latter after becoming aware of his perilous situation."

In **Ohio Casualty Ins. Co. v. Bartson, 69 Oh Ap 557**, we find the

facts parallel to the case at bar in that the driver approaching the intersection from the right testified that he never looked to his left prior to the collision. The Court held that he still had the right of way, reversed the judgment in favor of the driver on the left and rendered final judgment in favor of the preferred driver. The first paragraph of the syllabus of this case holds:

"A driver of an automobile approaching an intersection of two non-preferential streets within a municipality from the right of another automobile has the right to proceed uninterruptedly in a lawful manner in the direction in which he is going **until he becomes aware of danger in so doing.**" (Emphasis ours.)

The record in our case discloses that the plaintiff never became aware of the danger to the defendant until just an instant before the collision.

The charges as given were erroneous and prejudicial to the plaintiff because they did not properly define the obligation and rights of the plaintiff, as the preferred driver, as he approached the intersection, but required of him that he exercise ordinary care. There was no separation or proper distinction made in the chage between the conduct of the plaintiff which would constitute an unlawful act on his part and that required by the exercise only of ordinary care. The charge permitted the jury to find that the failure of plaintiff to look to the south as he approached the intersection was evidence of the rate of speed at which he was moving at the time of the collision. If it had any possible probative effect it related to the reasonableness of the rate of speed once it was determined.

Whether or not the 5th paragraph of the syllabus of Morris v. Bloomgren controls the obligation of plaintiff to look to his south at the intersection, we are committed to the proposition that such failure does not relate to speed, viz.; how fast his automobile was moving.

The charge may have caused and probably did cause the jury to conclude that plaintiff's failure to look to the south or into Wayne Avenue was a violation of the speed statute which supported its verdict against him. If the law is as we construe it, we would, if we had the power, hold that the verdict and judgment are against the manifest weight of the evidence.

The judgment will be reversed and the cause remanded for a new trial.

HORNBECK, J, concurs.

WISEMAN, J, dissenting.

The plaintiff was driving on a "through highway" and, if proceeding in a lawful manner, had the "right of way." "Right of way means the right to proceed uninterruptedly in a lawful manner," etc. Sec. 4511.01 (RR) R. C. Much of the evidence presented was on the issue as to whether plaintiff was proceeding in a lawful manner. This was the principal factual issue in the case. If the plaintiff was not proceeding in a lawful manner, he lost the "right of way." The driver of a vehicle may lose the "right of way" by driving at a rate of speed greater than

is reasonable or proper. Whether the plaintiff was driving at a rate of speed greater than was reasonable and proper, under all of the circumstances, was the subject of the special instruction which the appellant claims is prejudicially erroneous. It is claimed that the court erred in including in the special instruction the words: "Whether the plaintiff maintained a proper lookout." While it is true the rate of speed at which plaintiff was driving, according to his testimony, was prima facie lawful, still whether or not the rate of speed was reasonable and proper under all the circumstances was a question of fact to be determined by the jury. Sec. 4511.21 R. C. in part provides:

"No person shall operate a motor vehicle, * * * in and upon the streets and highways at a speed greater * * * than is reasonable and proper, having due regard to the traffic, surface, and width of the street or highway, and any other conditions," etc.

Appellant contends that the failure to keep a proper lookout is not related to the question of speed under the facts in this case; that plaintiff was not required to look south into Wayne Avenue for traffic approaching from that direction, inasmuch as plaintiff was driving on a through highway. The court did not charge that plaintiff was required to look into the intersecting street for oncoming traffic. The charge as given would require the plaintiff to keep a proper lookout only for vehicles entering the intersection from Wayne Avenue. Whether the plaintiff was keeping a proper lookout was a condition, a fact or circumstance to be considered by the jury in determining the reasonableness of the speed. Certainly, the plaintiff was not permitted to close his eyes simply because he was traveling on a through highway. In our opinion there is a definite relationship between the rate of speed and whether the driver kept a proper lookout, in determining the reasonableness of the speed.

The majority opinion states: "There is no evidence whatever, direct or inferential, that the plaintiff did not maintain a lookout ahead of him in the street in which he was moving. A presumption must be, therefore, indulged that he did so act." The failure of plaintiff to see defendant's automobile until the instant of the impact; the failure to apply the brakes, either before or after the collision; the speed at which he was driving; the distance his automobile traveled after the collision, were all facts and circumstances to be considered by the jury in determining whether plaintiff was keeping a proper lookout. There was evidence from which the jury could reasonably draw the inference that plaintiff was not keeping a proper lookout for other vehicles on the street. **Morrin v. Bund, 87 Oh Ap 357, 95 N. E. (2d) 262.**

Furthermore, we are of the opinion that the fifth paragraph of the syllabus of Morris v. Bloomgren does not relieve the driver on a "through highway" of the duty at all times to drive in a lawful manner. In my opinion, the driver on a "through highway" must at all times exercise ordinary care, and keep a proper lookout for other vehicles. In the exercise of such ordinary care such driver has a right to assume that the driver approaching from an intersecting, nonpreferential highway, will yield the right of way, but this assumption and this right does not clothe the driver on the "through highway" with the right to

drive unlawfully. Such driver's duty to exercise ordinary care does not first arise when he discovers that the other driver is not yielding the right of way and has placed himself in a perilous situation.

In my opinion the special instructions and the general charge were not prejudicially erroneous.