[No. 39909. Department One. February 13, 1969.]

THE STATE OF WASHINGTON, *Respondent,* v. HELEN WILSON, *Appellant.**

*Robt. W. Garver,* for appellant (appointed counsel for appeal).

*Edward B. Shamek,* for respondent.

*Reported in 450 P.2d 971.

McGovern, J.—Charged by information with the crime of aiding or abetting another to commit the crime of grand larceny, defendant was tried by jury, convicted, and now appeals from the judgment and sentence entered on that verdict.

Defendant's husband, Robert "Bob" Wilson, contracted with Ramax Corporation, hereafter referred to as "Ramax," to log some of the latter's lands in Klickitat County. All logs taken from those lands were to be delivered to designated mills for the credit of Ramax. Defendant uniformly participated in the contract negotiations between her husband and Ramax and frequently assisted in the performance of her husband's responsibilities under the terms of the contract.

On or about February 1, 1966, defendant's husband caused some logs to be delivered to one of the specified mills, Mt. Adams Timber Products, with the instruction that the purchase price be credited by the mill to the account of defendant. They were thus credited and on February 4, 1966, defendant Helen Wilson received payment. It was the state's contention that the logs were taken from the property of Ramax and wrongfully appropriated to the account of defendant. This gave rise to the information filed against the defendant.

December 1966, Robert "Bob" Wilson pleaded guilty to a grand larceny charge of taking *other* logs from Ramax at a different time.

On this appeal, defendant Helen Wilson directs our attention to four assignments of error, each of which she claims to be grounds for reversal. We consider only one, it being dispositive.

It is claimed that the state failed to prove its charge that Robert "Bob" Wilson secreted, withheld and appropriated Ramax logs to his own use on or about February 1, 1966, and that, therefore, defendant Helen Wilson should not have been convicted of aiding or abetting him in such an act. With that assertion we agree.

Used as a visual aid for the benefit of the court, witnesses and jury, was an aerial photograph of the area from

which the logs in question had allegedly been taken. The lower left-hand portion of the area within the photograph, state's exhibit No. 8, was designated "Tuthill" property; the remainder was characterized as Ramax property. Each such parcel of land was crossed by McAllen Road and each had within its borders what appeared to be timber landings on opposite sides of the road from each other.

One Clarence Anderson, who hauled logs for the Wilsons during the time in question, was the only witness who testified to the location from which the logs were taken. That interrogation consisted in part of the following:

Q. (By Mr. Schultheis) [Attorney for plaintiff] Are you familiar with that photograph, sir? A. Yes, sir. Q. During what period of time were you hauling from anywhere on this photograph? A. Right down on the bottom corner there is ———— Q. This is where you are pointing to, sir? A. Yes. Q. You would haul the logs from here to where? A. To Reese Stevenson—or the Mt. Adams. Q. Mt. Adams. I am showing you Plaintiff's Exhibit 5 which had been testified to as 16 scale tickets. Here is one. Are you this person that is referred to by Anderson? A. Yes. Q. Are you the person referred to as Andy? A. Yes. Q. Now, these tickets that I just showed you, do you remember where you obtained the logs that you hauled that these represent? The date on this is February 1st and February 1st and January 31st—were you hauling from this particular point during that period of time? A. That landing right there, yes.

He further, and finally, testified to the same subject as follows:

Q. That was the very next day from the one I just showed you here. Did you change location or were these both from the same place? A. Right in the same place across the road. Q. By across the road, would you point out on here what you mean by across the road? A. There is two landings, one here and just across the road.

In our attempt to determine whether the state had presented substantial competent evidence of a taking of the logs from Ramax property, we closely examined the aerial photograph used by Clarence Anderson when testifying. There are no markings or other identifying features on the

photograph to assist us in resolving the question of where the witness was pointing when he said "That landing right there, yes." He could have been pointing to the Tuthill property or to Ramax property. From the record we are unable to ordain the direction of his pointing finger.

Our requirement that cases on appeal will be decided only from the record still persists. If the evidence is not in the record it will not be considered. *State v. Davis,* 73 Wn.2d 271, 438 P.2d 185 (1968); *Falcone v. Perry,* 68 Wn.2d 909, 416 P.2d 690 (1966); *Lally v. Graves,* 188 Wash. 561, 63 P.2d 361 (1936).

In that the state had the responsibility of proving beyond a reasonable doubt that the logs in question were appropriated from Ramax lands and since no such proof appears in the record, we reverse.

WEAVER, ROSELLINI, and HALE, JJ., and OTT, J. Pro Tem., concur.