THE STATE OF OHIO, APPELLEE, *v.* SAFFELL, APPELLANT.

(No. 75-250—Decided November 12, 1975.)

Mr. *William Evans, Jr.*, and *Ms. Jane Irving Rinfret*, for appellee.

*Messrs. Mueller, Musitano & Haney* and *Mr. Thomas S. Haney*, for appellant.

*Per Curiam.* The question before us arises out of conflicting interpretations of the phrase "any other conditions" contained in R. C. 4511.21. The court below held that "* * * the physical condition of a motor vehicle, including its tires,* is a condition to be considered by the trier of fact in determining the reasonableness of a speed under R. C. 4511.21." However, in *McDonald* v. *Kelly, supra*, at page 52, the Court of Appeals held that "[t]he 'any other conditions' mean physical conditions in or connected with the highway."

The question presented is one of first impression. Although this court held in *Wolfe* v. *Baskin* (1940), 137 Ohio St. 284, that the presence of a traffic light and the fact that it was red were "conditions" within the contemplation of the "speed" statute (then G. C. 12603), the scope or limits of the phrase "any other conditions" have not been further explored.

Examining R. C. 4511.21, we note that a driver must have a due regard for (1) the traffic, (2) the surface of the roadway, (3) the width of the roadway, and (4) any other conditions. Such statute is clearly susceptible to analysis under the rule of *ejusdem generis*, and such analysis is delineated in paragraph two of the syllabus of *State* v. *Aspell* (1967), 10 Ohio St. 2d 1, as follows:

"Under the rule of *ejusdem generis*, where in a statute terms are first used which are confined to a particular class

---

*Appellant's truck had at least two "bad" tires at the time of the arrest.

of objects having well-known and definite features and characteristics, and then afterwards a term having perhaps a broader significance is conjoined, such latter term is, as indicative of legislative intent, to be considered as embracing only things of a similar character as those comprehended by the preceding limited and confined terms."

Applying that rule to R. C. 4511.21, we reject the holding below that the "physical condition of a motor vehicle" is a "condition" contemplated by the statute, and approve the quoted holding in *McDonald* v. *Kelly, supra.* We would also exclude from R. C. 4511.21 any "condition" which is not capable of being regarded and ascertained by a law enforcement officer who would be in a position to make an arrest pursuant to R. C. 4511.21.

Looking next to the first three items for which a driver must have a due regard (*i. e.* traffic, the surface of the roadway and the width of the roadway), we find that the trier of fact would have been justified in concluding that there was oncoming traffic, an automobile followed by the patrol car, and also traffic following defendant's truck; that the surface of the asphalt roadway followed the "rolling" terrain so that, up over the hill, visibility "dropped off"; and that the roadway was only 20 feet wide.

Upon that record, a speed exceeding the *prima facie* lawful limit by 15 to 17 mph was greater than is reasonable or proper. This result is buttressed by page three of the transcript where Mr. Haney, counsel for appellant, commenced the trial by making the "usual stipulations," "*the radar*, and the officer, and his attire, and the markings of the car and venue." (Emphasis added.)

We, therefore, affirm the judgment of the Court of Appeals insofar as it affirmed the conviction. *State* v. *Neff* (1975), 41 Ohio St. 2d 17; *State* v. *Myers* (1955), 164 Ohio St. 273.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.

CORRIGAN, J., dissenting. This arrest for speeding 65-67 miles per hour was made at 12:45 p. m., November 1, 1973, on U. S. 250 in Wayne County near Mt. Eaton. U. S. 250 is a two-lane highway. The patrol car and the defendant were approaching one another. The police officer obtained his speed reading from a radar speed device known as MR-7 which was mounted in his moving patrol car.

The record is destitute of any information about the operation of the MR-7 device, except a defense stipulation regarding the use of radar. In a well-considered opinion by Whiteside, J., in *State* v. *Wilcox* (1974), 40 Ohio App. 2d 380, it is held, in paragraph two of the syllabus, that:

"A person may not be convicted of speeding solely upon evidence obtained from a radar speed-meter device mounted in a moving patrol car in the absence of (1) expert testimony with respect to construction of the device and its method of operation with respect to its ability to differentiate the speed of a vehicle approaching the moving patrol car from the opposite direction from the combined speed at which the two vehicles are moving toward each other, and (2) evidence that the device is in good condition for accurate work and (3) evidence that the witness using the device is one qualified for its use by training and experience."

This seems to me to be a fair requirement of proof of guilt in a speeding case where such a sophisticated radar device is employed that analyzes the scrambling of very high frequency radio waves to come up with a vehicular speed figure on a suspected misdemeanant. It should be done in all cases in which the MR-7 device is utilized for speeding arrests.

I would reverse.