[No. 43940.   En Banc.   June 24, 1976.]

GAIL GROBE, *Respondent*, v. VALLEY GARBAGE SERVICE, INC., ET AL, *Appellants*.

218

*Lawrence Cary Smith* and *Smith, Donohue & Compau,* for appellants.

*Joseph J. Rekofke* and *Winston, Cashatt, Repsold, Mc-Nichols, Connelly & Driscoll,* for respondent.

HOROWITZ, J.—Defendants appeal a judgment against them in a comparative negligence case for personal injuries sustained by the plaintiff as a result of an automobile-truck collision within the Spokane Valley area, Washington. Plaintiff cross-appeals. We affirm.

Plaintiff's claim arises from a collision between her car and defendants' garbage truck at 12:30 p.m. on January 25, 1972, at an uncontrolled intersection in a residential area of what is commonly called the Spokane Valley. Plaintiff was proceeding west on 23rd Avenue and defendant Dennis Widener was driving the truck north on Glenn Road. Plaintiff and defendant Widener each testified her or his vehicle was going 15 to 20 m.p.h. when each first saw the other. The speed limit at the intersection was 25 m.p.h. The collision occurred in the northeast quadrant of the intersection of 23rd Avenue and Glenn Road. Plaintiff had the right of way. Both streets are paved and are 40 feet wide. At the time of the accident it was snowing, with 4 to 5 inches of snow on the ground. Neither driver saw the other in time to avoid the accident. Plaintiff's car was severely damaged and plaintiff was thrown out of the car and injured. No witnesses saw the accident, although a third party did see plaintiff's car as it spun and threw her out.

The trial began February 24, 1975. The jury returned a verdict finding plaintiff's total damages to be $100,000 and defendants' total damages to be $500, and finding plaintiff 25 percent negligent and defendant 75 percent negligent. Judgment was therefore entered for plaintiff in the sum of $75,000 and for defendants in the sum of $125. Defendants appealed and plaintiff cross-appealed.

Defendants first contend the court erred in refusing their instruction, submitting to the jury the issue of reasonable speed (RCW 46.61.400; WPI 70.05). Defendants claim, notwithstanding the oral testimony as to speed, the jury should have been permitted to determine on the basis of the physical evidence whether plaintiff was exceeding a reasonable speed at the time of the collision. The court did not err.

■ A speed instruction is properly refused when (1) excessive speed is not a proximate cause of the accident, or (2) the conclusion speed was unreasonable is the product of impermissible speculation and conjecture. Either or both reasons justify the refusal here.

We first consider proximate cause before plaintiff saw defendants' truck. It is undisputed plaintiff did not see defendants' truck until she arrived at approximately the entrance to the intersection. At that moment, defendants' truck was also just entering the intersection on her left. Plaintiff's car was on the north side of 23rd Avenue (which is 40 feet wide), and defendants' truck (approximately 7 to 8 feet wide) was at the entrance on the intersection on her left, on the east side (right-hand lane) of Glenn Road (also 40 feet wide). The vehicles were separated only by the south side of 23rd Avenue, a distance of approximately 20 feet. Both vehicles continued to move at approximately 15 to 20 m.p.h. (22.1-29.3 ft./sec.). Plaintiff therefore had only about 1 second of reaction time available before collision. Plaintiff could not have traveled further than 12 to 13 feet (the width of one lane of Glenn Road less the width of the truck) before colliding with the truck. Even if plaintiff's car had been traveling as little as 7 m.p.h. (10.3 ft./sec.)—hardly an excessive speed—she would have traveled 10.3 of the 12 to 13 feet in 1 second, and considering plaintiff's entitlement to reaction time as later discussed, the collision could not have been avoided. *See Murray v. Banning*, 17 Wn.2d 1, 6, 134 P.2d 715 (1943); Am. Jur. 2d Desk Book, Doc. 176, at 456 (1962).

■ As stated in *White v. Greyhound Corp.*, 46 Wn.2d 260, 264, 280 P.2d 670 (1955):

> This court, on several occasions, has held that the speed of an automobile, in excess of that permitted by statute or ordinance, was not the proximate cause of a collision when the automobile of the one charged with excessive speed was where it was entitled to be, *and the driver would not have had sufficient time to avoid the collision had he been driving at a lawful speed.*

(Italics ours.)

Therefore, if speed, even if excessive, is not a proximate cause of the collision, liability cannot be based thereon. *Moyer v. Clark*, 75 Wn.2d 800, 804, 454 P.2d 374 (1969); *Bohnsack v. Kirkham*, 72 Wn.2d 183, 194, 432 P.2d 554

(1967); *Woodward v. Simmons*, 7 Wn.2d 10, 19, 108 P.2d 637 (1941); *Beach v. Pacific Northwest Traction Co.*, 135 Wash. 290, 237 P. 737 (1925). In such a case, the trial court may properly refuse an instruction on the speed of the automobile. *Burlie v. Stephens*, 113 Wash. 182, 187-88, 193 P. 684 (1920). In the instant case, the trial court stated in refusing the proposed instruction the speed of plaintiff's automobile was not a substantial factor contributing to the accident.

Nor can excessive speed be shown to be a proximate cause of a collision where there is no substantial evidence the speed was excessive. Therefore, the speed instruction was also properly refused because any conclusion from the circumstantial evidence that plaintiff's speed was excessive under RCW 46.61.400 would be speculative—the product of guesswork and conjecture. *Izett v. Walker*, 67 Wn.2d 903, 909-10, 410 P.2d 802 (1966).

■ Before plaintiff saw defendants' truck, while plaintiff was driving towards the intersection, as later appears, there is substantial evidence plaintiff was not maintaining a proper lookout. However, failure to maintain a proper lookout is not evidence plaintiff's speed was excessive. Thus the Ohio speed statute as construed in *McDonald v. Kelly*, 101 Ohio App. 46, 52, 134 N.E.2d 396 (1955) (approved in *State v. Saffell*, 44 Ohio St. 2d 39, 337 N.E.2d 622 (1975)), makes the determination of whether speed is excessive depend on physical conditions in or connected with the highway. The statute does not make excessive speed depend on failure to maintain a proper lookout. *McDonald v. Kelly, supra* at 52, states:

> [A]n excessive rate of speed may not be shown by proof of the failure to exercise the common-law obligation of maintaining a lookout into a street from which a nonpreferred driver of an automobile is moving.

RCW 46.61.400 likewise makes no mention of lack of a proper lookout as a permissible factor in determining excessive speed. Such a determination is made "under the conditions and having regard to the actual and potential

hazards then existing." These include "when [a] special hazard exists with respect to . . . other traffic or by reason of weather or highway conditions."

Nor do the physical conditions at the time of the collision, properly considered under RCW 46.61.400, permit an inference of excessive speed. To answer this question in a particular case there must be substantial evidence of what would have been a reasonable speed under the conditions then prevailing.

The record shows when plaintiff approached the intersection, there was snow on the ground and her visibility was obstructed by the snow storm. There was, however, no expert testimony nor for that matter, any other evidence as to what a reasonable speed would have been under these circumstances. *See, e.g., Walker v. Butterworth,* 122 Wash. 412, 415, 210 P. 813 (1922). Thus, there was no evidence of the speed of other vehicles using these roads at the same time.

Defendants contend there are several categories of physical or circumstantial evidence of excessively high speed: (1) weather conditions and terrain; (2) behavior of plaintiff's car up to the time of the impact; and (3) nature and violence of the collision.

None of these categories of evidence alone or together are sufficient to establish plaintiff's speed was excessive. The mere fact that certain weather conditions and terrain were present at the time of the accident, standing alone or together with anything in common knowledge, cannot furnish an adequate basis for a conclusion that plaintiff's vehicle, operated at 15 to 20 m.p.h. in a 25 m.p.h. zone under those conditions, was operated at an excessive speed under the provisions of RCW 46.61.400. We have already noted that the behavior of plaintiff's car up to the time of impact, whether before or after plaintiff saw the truck, does not furnish a basis for determining what a reasonable speed should have been. Plaintiff, after seeing defendants' truck, had no significant opportunity to slow down or to take other evasive action although she had already begun to

turn to the right at the intersection. No conclusions as to reasonable speed under the conditions then prevailing could be drawn from the behavior of plaintiff's car prior to the impact without impermissible guess, speculation, and conjecture.

We are left then with considering whether the nature and violence of the collision provides the missing substantial evidence needed to show plaintiff's speed was excessive.

The following facts are undisputed. The left front of plaintiff's car collided with the right front of defendants' truck, and the left side and rear of her car then slammed into the side of the truck. Plaintiff's car was severely damaged, and plaintiff was thrown out of the car and severely injured. Her car, when it came to rest, faced south next to the east curb of Glenn Road and was located approximately 10 feet north of 23rd Avenue. The truck was damaged in the door, gas tank, and running board, all on the passenger's side. The truck was knocked sideways into the next lane (just how far the truck was knocked sideways is unclear), but proceeded under its own power a short distance to the north and then stopped. To discern from these facts whether plaintiff was exceeding a reasonable speed requires apportionment of the forces of the impact and violence of the collision between defendants' truck and plaintiff's car, each moving at 15 to 20 m.p.h. We do not see how a jury could do more than guess at such an apportionment.

In *Cameron v. Goree*, 182 Ore. 581, 189 P.2d 596 (1948), the court called attention to the conjectural nature of conclusions as to negligent or excessive speed based upon testimony as to impact between two cars, each in motion when the crash occurred. Although the case did not involve facts identical to those in the instant case, the principles stated support the view that conclusions as to excessive speed here would be based on impermissible conjecture. The court said:

> We think that it is permissible for us to infer that if a car proceeding along Palmquist Road at a lawful rate of

speed hit another car broadside, much damage would be done . . . Although there is no evidence upon the subject, we believe that it is obvious that a car traveling at a speed of 30 to 35 miles an hour would inflict great damage upon colliding with the side of another car. Undoubtedly, the fenders and body of the victim would be crushed. The extent of the damage would be dependent upon circumstances, such as (a) the respective weight of the cars, (b) the condition of their tires, (c) the condition of the surface of the pavement, and (d) the speed of the car which received the blow.

The damage wrought in some collisions appears to be freak or capricious. In some instances, the occupants of the cars emerge unscathed although the cars are total wrecks; in others the damage to the cars is minor but that to the occupants is appalling. In all instances, however, the law of physics operates indiscriminately and what appears to be novel damage in a particular case would be readily understandable if all of the circumstances were brought to light.

. . . If it were true that all cars traveling at prudent speeds inflict no damage, and that only those proceeding at unlawful rates crush objects which they strike, then the results of this collision would prove negligence. But there is no such rule, and, so far as we know, a car traveling at a careful rate of speed, upon colliding with one which entered an intersection unlawfully, would cause all of the damage which the respondent's witnesses described.

The burden of proof rested upon the respondent to prove that the appellant's speed was negligent. That burden could not be discharged by the submission of evidence showing no more than a conjecture or possibility favorable to the respondent. It is our belief that the damage inflicted by the impact fails to establish negligence upon the appellant's part.

*Cameron v. Goree, supra* at 605-06.

An examination of the Washington cases cited by defendants reveals no holding that conflicts with the principles set out in *Cameron*; rather they are consistent with those principles. For example, in *Choate v. Robertson*, 31 Wn.2d 118, 195 P.2d 630 (1948), the defendant lost control of his car and skidded into the opposing lane of traffic, where he

stopped. Plaintiff's car then crashed into him. The court held the damage done to defendants' car by plaintiff was properly considered on the issue of plaintiff's excessive speed. However, the court was careful to note:

> Respondent's car had come to a rest, and the damage was caused entirely by the force with which it was hit by appellant's [plaintiff's] automobile.

Choate v. Robertson, supra at 122. Similar circumstances are found in Engel v. Interstate Transit Co., 9 Wn.2d 590, 115 P.2d 681 (1941) (second vehicle standing still); Copeland v. North Coast Transp. Co., 169 Wash. 84, 13 P.2d 65 (1932) (second car going very slowly); Gayson v. Daugherty, 190 Wash. 133, 66 P.2d 1148 (1937) (pedestrian struck), all cited by defendants.

In the instant case, both vehicles were going approximately 15 to 20 m.p.h. at the moment of impact, and as already noted, this fact would prevent the jury from being able to determine from the force of the impact whether plaintiff was exceeeding a reasonable speed. As stated in Knight v. Borgan, 52 Wn.2d 219, 226, 324 P.2d 797 (1958):

> [T]he circumstantial evidence relied upon . . . does not appear any more consistent with an unlawful rather than a lawful rate of speed.

Thus, the circumstances relied upon by defendants—improper lookout, physical conditions present, and nature and force of the accident—do not eliminate a reasonable probability plaintiff was not traveling at an excessive speed at the time of the collision, and could not support a finding to the contrary by the jury. When circumstantial evidence is relied upon to prove negligence, the circumstances "must with reasonable certainty lead to the conclusion for which they are adduced." Ruff v. Fruit Delivery Co., 22 Wn.2d 708, 720, 157 P.2d 730 (1945). As stated in Schmidt v. Pioneer United Dairies, 60 Wn.2d 271, 276, 373 P.2d 764 (1962):

> The facts relied upon to establish a theory by circumstantial evidence must be of such a nature and so related to each other that it is the only conclusion that fairly or

reasonably can be drawn from them. A verdict cannot be founded on mere theory or speculation. If there is nothing more tangible to proceed upon than two or more equally reasonable inferences from a set of facts, and under only one of the inferences would the defendant be liable, a jury will not be allowed to resort to conjecture to determine the facts.

■ Defendants also contend speed was a proper consideration for the jury in this comparative negligence case because plaintiff's excessive speed may have enhanced her injuries. We disagree. First, if excessive speed was not a proximate cause of the accident, the comparative negligence rule has no application in apportioning liability between the parties on that basis. *See* Comment, *Comparative Negligence*, 49 Wash. L. Rev. 705, 712-13 (1974). Second, there was no testimony to show to what extent plaintiff's injuries might have been lessened had she been going slower. The proposed instruction would therefore only invite speculation, guessing, and conjecture by the jury on this question. *See Bartlett v. Hantover*, 84 Wn.2d 426, 431-32, 526 P.2d 1217 (1974); *Izett v. Walker, supra.* Third, the instruction as framed did not present the issue of enhanced damages. *Hall v. Lawton*, 36 Wn.2d 317, 319, 217 P.2d 796 (1950).

■ Defendants next contend the trial court erred in giving instruction No. 12, which states the rule that a favored driver is allotted a reasonable reaction time to take evasive action when it became apparent to him in the exercise of ordinary care the disfavored driver will not yield the right-of-way. Defendants contend the instruction is only proper when the favored driver in fact sees the approach of the disfavored driver and assumes he will yield the right-of-way. Here, defendants argue, plaintiff did not see the truck until it was too late to avoid the accident.

The instruction was proper. The mere fact the favored driver does not see the disfavored driver until it is too late to avoid the accident does not mean he is not allowed a reasonable reaction time before he can be charged with negligence. In *Olpinski v. Clement*, 73 Wn.2d 944, 442 P.2d

260 (1968), the plaintiff favored driver did not see the other car until the time of the accident. The court affirmed the order of a new trial for the plaintiff because there was no evidence of contributory negligence. The court rested its decision upon the plaintiff's right to a reasonable reaction time after it become apparent to him that the right-of-way would not be yielded. *Olpinski v. Clement, supra* at 949; accord, *Archibald v. Gossard*, 65 Wn.2d 486, 397 P.2d 851 (1965). It is quite possible, of course, that "in the exercise of ordinary care" plaintiff should have become aware, before she reached the intersection and when there was still time to avoid the accident, that the driver of the truck would not yield the right-of-way to her. This, however, is the question of fact to which instruction No. 12 was directed, and was properly left to the jury. *McCormick v. Hannenberg*, 170 Wash. 133, 136, 15 P.2d 939 (1932).

Defendants finally contend the trial court erred by refusing to permit defendants to prove plaintiff was not wearing an available seat belt at the time of the collision between the two vehicles.

We hold (1) this issue is not before us because it is not raised by the record we may consider, and (2) if the issue is properly before us, the trial court's ruling was correct. To make clear our first ground, some additional facts must be considered.

Defendants filed their notice of appeal on April 11, 1975, and plaintiff filed her notice of cross-appeal on April 22, 1975. On June 10, 1975, a copy of the statement of facts was served upon plaintiff. No amendments to the statement of facts were proposed, and it was certified by the trial court on July 15, 1975. Defendants filed the statement of facts in the Court of Appeals on July 15, 1975. On August 28, 1975, defendants filed their brief with the Court of Appeals. On September 19, 1975, the cause was transferred to this court from the Court of Appeals pursuant to RCW 2.06.030. October 6, 1975, plaintiff filed her brief with this court. On December 29, 1975, defendants filed in superior court their motion to amend statement of facts, requesting in part that

the trial court amend the statement of facts to include the substance of an alleged pretrial ruling of the trial court concerning defendants' proposed seat belt defense. On February 6, 1976, at defendants' request, the trial court certified a "Clarification of Statement of Facts." It was filed in this court on February 11, 1976.

The "clarification" states in substance that during a pretrial chambers conference defendants' counsel said he intended to introduce in evidence the fact that there was an available seat belt and shoulder strap in plaintiff's automobile and that plaintiff was not wearing them at the time of the collision. In answer to an inquiry of the court, defendants' counsel stated he did not expect to produce any expert witnesses concerning the proposed seat belt defense, other than to call the state trooper who investigated the accident. The court "advised" defendants' counsel no evidence concerning plaintiff's failure to wear a seat belt could be introduced, but should defendants' counsel produce any expert witnesses concerning the proposed defense, the court might reconsider its position. The "clarification" states these proceedings were not made a matter of record at that time.

On February 13, 1976, defendants filed a reply brief in this court. The brief rejects the statement made in plaintiff's answering brief that the record is devoid of information concerning this purported ruling of the trial court, and points out that since that time the record has been clarified to reflect the ruling. Plaintiff filed her objections to the "clarification" in this court on February 17, 1976, insisting *inter alia* the court had made no "ruling" as claimed, that the in-chambers conference had not been reported notwithstanding a court reporter was available on call, and the "clarification" did not accurately reflect what had occurred. Oral arguments before this court in the instant case were scheduled for and held on February 23, 1976.

■ We first note the oft-repeated rule that cases on appeal are decided only from the record, and "[i]f the evidence is not in the record it will not be considered."

*State v. Wilson,* 75 Wn.2d 329, 332, 450 P.2d 971 (1969). Here, defendants' "clarification" of the statement of facts was not made part of the record originally certified as contemplated both by CAROA 34 and ROA I-34, nor after this court took jurisdiction, was proof of the filing and service of the "clarification" filed in this court in the time period allowed by ROA I-34(2). *See State v. Sherwood,* 166 Wash. 160, 163-64, 6 P.2d 595 (1932); *State v. Schafer,* 154 Wash. 322, 326-28, 282 P. 55 (1929).

█ It is true that ROA I-35 permits a supplementary statement of facts. That rule, however, does not purport to allow the filing of such a supplementary statement as of right after the filing period permitted by ROA I-34(2) has expired, regardless of the lack of due diligence. To permit such a supplementary statement as of right, regardless of the exercise of due diligence by an appellant, could frustrate the policy of expedition in the handling of appeals implicit in the use of time limitations in ROA I-34.

It is true there may be instances in which an appellant may present an amendment or supplement in response to objections to a proposed statement of facts made by respondent or the trial court which by necessity may have to be made after the permitted time periods set forth in ROA I-34 or CAROA 34. *Livermore v. Northwest Airlines, Inc.,* 6 Wn.2d 1, 20, 106 P.2d 578 (1940). Again, there may be instances in which a late addition to a statement of facts may be permitted in this court's discretion if it finds permission will result in little or no prejudice to the respondent and denial will cause substantial prejudice to the appellant. *See Neal v. Green,* 68 Wn.2d 415, 413 P.2d 339 (1966); *Haasze v. McConnachie,* 1 Wn. App. 388, 461 P.2d 572 (1969). Here, however, as next appears, a late filing of the "clarification" of statement of facts would substantially interfere with plaintiff-respondent's rule-granted right to timely present her argument in support of the judgment and to have that argument timely considered by this court. ROA I-41.

Under ROA I-41 (as well as CAROA 41), a respondent is

only permitted one brief, which must be served and filed within 30 days after the service of appellant's brief. Here, plaintiff-respondent was not made aware of the proposed addition to the statement of facts until more than 2 months after she was required to and did file her answering brief. Plaintiff's answering brief was properly prepared on the basis of the same statement of facts filed in this court and used by defendants in preparation of their appellants' brief.

Moreover, the "clarification" was not filed with this court until February 11, 1976 (12 days before oral argument). Plaintiff's brief had pointed out 4 months earlier the statement of facts did not contain a record of the pretrial conference, and, therefore, found it unnecessary to discuss the merits of a seat belt defense. Not only can we find no justification for defendants' long delay, but that delay works a hardship on the opposing party and this court in properly preparing for the hearing. As stated in *State ex rel. Hersner v. Arthur*, 7 Wash. 358, 363, 35 P. 120 (1893), in rejecting a request for an amendment to a statement of facts:

> [T]he questions which ought to have been settled within ten days after the filing of the statement would remain unsettled up to the time of the hearing of the appeal, and no intelligent preparation for the hearing of a case in this court could be made.

It is self-evident that adequate time to prepare briefs and arguments is vital in determining an issue as important as the availability of a seat belt defense in a comparative negligence case. *See* Hoglund & Parsons, *Caveat Viator: The Duty to Wear Seat Belts Under Comparative Negligence Law*, 50 Wash. L. Rev. 1 (1974). A long delay in bringing up such an obvious omission from the record is particularly unjustifiable.

> We do not believe that an appellant can file whatever the court reporter hands him as a proposed statement of facts and then say he filed it in good faith and intended it to be full and complete if, in fact, even a cursory examination would show that it was incomplete. The party proposing a statement of facts must take the responsibility for at

least the clearly apparent omissions of the court reporter. In *State ex rel. Royal v. Linn*, 35 Wash. 116, 76 Pac. 513, we said that "he must be presumed in law to know what the proposed statement contains."

*Johnson v. Washington Trust Co.*, 33 Wn.2d 84, 88, 204 P.2d 505 (1949).

■ In any case, the trial court did not err in rejecting evidence of the seat belt defense under the circumstances here. Defendants' counsel told the court at the time of the claimed ruling he would not produce expert testimony on the effect of the failure of plaintiff to use her seat belt. Defendants never availed themselves of the opportunity to induce the court to change its mind on the inadmissibility of evidence supporting their seat belt defense by using the testimony of expert witnesses concerning that defense. The claimed ruling was within the court's discretion.

Recent decisions have held that there is *no* presumption that nonuse of seat belts caused or aggravated a party's injuries. Consequently competent expert or other testimony must be submitted which will establish that the injuries of a party would have been reduced or minimized if seat belts had been used, or were caused or aggravated by the failure to use a seat belt.

(Footnotes omitted.) Hoglund & Parsons, *supra* at 21.

■ We now address plaintiff's cross-appeal. Plaintiff contends she was entitled to a directed verdict on the issue of liability because she was not guilty of negligence as a matter of law. We do not agree. Plaintiff's possession of the right-of-way at the intersection did not relieve her from the duty to exercise reasonable care for her own safety. This duty includes the duty to look out for approaching traffic from her left. *Watson v. Miller*, 59 Wn.2d 85, 88, 366 P.2d 190 (1961).

There is evidence in the record to support a determination by the jury that plaintiff negligently failed to keep a proper lookout when approaching the intersection. On cross-examination, plaintiff testified there was nothing to obstruct her view as she approached the intersection. Defendant Widener testified on direct examination he did not

consider the intersection "obstructed," and that there was nothing to block his vision of a vehicle proceeding west on 23rd Avenue. The evidence enabled the court to properly instruct the jury concerning the following:

The defendants claim that plaintiff was negligent in failing to exercise ordinary care by failing to keep a proper lookout to avoid a collision and that such negligence was a proximate cause of her injuries and damages, and further was a proximate cause of damages to the garbage truck . . .

Affirmed on defendants' appeal and on plaintiff's cross-appeal.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

Petition for rehearing denied September 16, 1976.