98

(No. JTO-4149—Decided February 25, 1975.)

Court of Common Pleas of Ross County, Juvenile Division.

*Mr. Jack Kellenberger*, assistant prosecuting attorney, for complainant.

*Messrs. Phillips & Street* and *Mr. John Street*, for the child.

Radcliffe, J.    This proceeding was instituted upon a complaint being filed in the Juvenile Division of the Common Pleas Court on the 20th day of December, 1974, by the

Police Department of the city of Chillicothe, alleging V L C was a juvenile traffic offender, in that on the 19th day of December, 1974, she did violate Section 331.16 of the Revised Ordinances of the city of Chillicothe and that she, therefore, became a juvenile traffic offender.

At a preliminary hearing held on December 27, 1974, the child denied the allegations of the complaint and the matter was set for hearing at a later date.

The trial of this case concluded on February 11, 1975.

Section 331.16 of the Revised Ordinances of the city of Chillicothe, Ohio, states:

"The operator of a vehicle, intending to enter a through street, shall yield the right of way to all other vehicles on said through street, unless otherwise directed by a traffic control signal, or as provided in this section.

"The operator of a vehicle shall stop in obedience to a stop sign at an intersection and shall yield the right of way to all other vehicles not obliged to stop, or as provided in this section.

"The operator of a vehicle in obedience to a yield sign shall yield the right of way to all other vehicles, or pedestrians approaching from a different direction into its or his path.

"The operator of a vehicle transferring from one traffic lane to another on entering a through street from a ramp or entrance, shall not do so until the driver has first ascertained that such movement can be made with safety."

At different stages throughout the proceeding, counsel for the complainant and the child have referred to the proceeding as "criminal" and on other occasions as "civil" in nature.

Court would merely call to the attention of counsel R. C. 2151.01, and state as a matter of law it is neither. The construction and purpose section of R. C. Chapter 2151, R. C. 2151.01, states that with the exception of those sections providing for the criminal prosecution of adults, these sections shall be liberally interpreted and construed so as to effectuate the following purposes:

"(A) To provide the care, protection, and mental and physical development of children subject to Chapter 2151 of the Revised Code;

"* * * *

"(D) To provide judicial procedures through which Chapter 2151 of the Revised Code is executed and enforced and which the parties are assured a fair hearing, and their constitutional and other legal rights are recognized and are enforced."

R. C. 2151.358 states:

"The judgment rendered by the court under this chapter shall not impose any of the civil disabilities ordinarily imposed by conviction of a crime in that the child is not a criminal by reason of such adjudication, nor shall any child be charged or convicted of a crime in any court except as provided by this chapter. The disposition of a child under a judgment rendered or any evidence given in court is not admissible as evidence against the child in any other proceeding in any other court, except that the judgment rendered and the disposition of such child may be considered by any court only as a matter of sentence or to the granting of probation. * * *"

Juv. R. 37 (B), adopted by the Supreme Court of Ohio in conformity with Section 5, Article IV of the Ohio Constitution, effective July 1, 1972, states:

"No public use shall be made by any person, including a party, of any juvenile court record, including the recording or a transcript thereof of any juvenile court hearing, except in the course of an appeal or as authorized by order of the court."

On the date alleged in the complaint, the court finds from the evidence that Plyley's Lane, located in the city of Chillicothe, was a through street and that Betty Lane, located in the city of Chillicothe, was an intersecting or stop street where said street intersects with the street known as Plyley's Lane. The evidence further is undisputed that Miss C. was operating a motor vehicle on Betty Lane, going in a generally easterly direction on that street, just previous to the time of the alleged violation and that

she stopped in obedience of a traffic control device, to wit: a stop sign, and failing to observe approaching traffic of either direction, she proceeded into the intersection. The evidence was undisputed that Peggy Simpson was operating an automobile in a northerly direction on Plyley's Lane at the time of the alleged complaint.

The evidence established that the automobile driven by Miss C. struck or was struck by the left side or rear of the vehicle driven by Miss Simpson within the intersection of said streets.

The facts as found by the court indicate the vehicle driven by Miss Simpson then proceeded in a northerly direction and left Plyley's Lane on the west side thereof, proceeded to run into a garage and struck another car which was in the garage, causing considerable property damage.

Section 331.16 of the Ordinances of the city of Chillicothe, Ohio is a criminal statute and requires a strict construction. Penal statutes must be construed in a sense which best harmonizes with their intent and purpose. *United States* v. *Betteridge* (1942, N. D. Ohio, E. D.), 43 F. Supp. 53, 56.

The intent of the legislative body will govern and a strict construction should not be permitted to defeat the policy and purposes of the ordinances. In other words, the strict construction of a criminal statute does not mean such construction of it as to deprive it of the meaning intended.

The rule of strict construction confines an offense to the words of the statute, but it permits the words not only to be read naturally, but to be given a meaning in harmony with the purpose and intent of the law as far as it may be done without distortion of the language.

It is the opinion of this court that the Council of the city of Chillicothe recognizes that traffic congestion is a constant menace to the safety of everyone using our streets, and in order to provide for their safety at intersections, through streets were designated and stop signs erected. Through streets would become death traps if drivers were not required to yield the right of way to all other vehicles

not obliged to stop before entering such intersection.

The ordinance is intended to regulate traffic at intersections much the same as traffic lights, and when either is violated the violation is a continuing one as the vehicle proceeds through the intersection. *State* v. *Knadler* (1957), 105 Ohio App. 135.

The evidence disclosed that the vehicle being driven north by Miss Simpson was being operated at speed of 35 miles per hour, and that the point of impact of said vehicles was near the imaginary center line of Plyley's Lane.

Testimony of several witnesses established that a pedestrian crosswalk extended across Plyley's Lane at the north edge or prolongation of Edgewood Drive and Plyley's Lane and also another existed across Betty Lane parallel with Plyley's Lane at or near the intersection thereof.

Allen Elementary School is located approximately .3 of a mile north of the accident scene and school closed on the date in question at 2:45 p. m. The alleged violation occurred at approximately 3:30 p. m. or approximately 45 minutes after the closing of the school.

Assistant Engineer Gary Quinn of the Service Department of the city of Chillicothe testified of the existence of a sign erected approximately 500 feet south of initial collision point which consisted of two signs, the bottom square sign stating "Speed Limit 20," with a square diagonally erected sign atop on same post stating "School Crossing." Engineer Quinn's diagrammatic drawing admitted into evidence further indicates another sign at school grounds with two signs on a post; the top sign being rectangularly shaped, placed squarely across post containing one word "School," and with a square sign mounted below on same post stating "Speed Limit 20."

Mr. Quinn testified that a person "sitting" at the stop sign at the intersection of Betty Lane and Plyley's Lane had unobstructed line of sight of minimum distance of 375 to 400 feet to the south on Plyley's Lane and that the area was generally residential in character. Plyley's Lane was more than one mile in length.

Section 301.01 of the Revised Ordinances of the city

of Chillicothe provides definition of words and phrases as follows:

"(21) THROUGH STREET OR HIGHWAY. Through street or highway shall mean every street or highway as provided in Section 313.02 (Ord. 24-66. Passed 3-16-66).

"* * *

"(27) INTERSECTION. Intersection shall mean the area, bounded by the lateral lines, real or projected, of two or more streets or highways which meet or cross each other.

"(28) CROSSWALK. Crosswalk shall mean:

"(a) That part of a roadway at intersections ordinarily included within the real or projected prolongation of property lines and curb lines or, in the absence of curbs the edges of the traversable roadway;

"(b) Any portion of a roadway at an intersection or elsewhere, distinctly indicated for pedestrian crossing by lines or other markings on the surface;

"(c) Notwithstanding the foregoing provisions of this subsection, there shall not be a crosswalk where authorized signs have been placed indicating no crossing.

"* * *

"(32) RESIDENCE DISTRICT. Residence district shall mean the territory, not comprising a business district, fronting on a street or highway, including the street or highway, where, for a distance of three hundred feet or more, the frontage is improved with residences or residences and buildings in use for business.

"* * *

"(34) TRAFFIC CONTROL DEVICES. Traffic control devices shall mean all signs, signals, markings, and devices placed or erected by authority of a public body or official having jurisdiction, for the purpose of regulating, warning, or guiding traffic, including signs denoting names of streets and highways.

"* * *

"(38) RIGHT OF WAY. Right of way shall mean the right of a vehicle, or pedestrian to proceed uninterruptedly in a lawful manner in the direction in which it or he is moving in preference to another vehicle, or pe-

destrian approaching from a different direction into its or his path.''

It is the contention of Miss C. that, after stopping at a stop sign, she was excused from the requirement of yielding to the user or occupant of a through street because such user or occupant was proceeding in an ''unlawful manner,'' when the speed of the privileged occupant was determined to be in excess of 20 miles per hour.

Section 333.03 of the Revised Ordinances of the city of Chillicothe reads in part as follows:

''333.03 SPEED LIMITATIONS; ASSURED CLEAR DISTANCE AHEAD.

''No person shall operate a motor vehicle in and upon the streets and highways at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface and width of the street or highway and any other conditions. No person shall drive any motor vehicle in and upon any street or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead.

''It shall be prima-facie lawful for the operator of a motor vehicle to operate the same at a speed not exceeding the following:

''(a) *Fifteen miles per hour* on all alleys within the municipality;

''(b) *Twenty miles per hour* when passing a school building or the grounds thereof during school recess and while children are going to or leaving school during the opening or closing hours, and when appropriate signs giving notice of the existence of the school are erected;

''(c) *Twenty-five miles per hour* in all other portions of the municipality; except on state routes outside business districts, and alleys;

''(d) *Thirty-five miles per hour* on all state routes within the municipality outside business districts;

''(e) *Fifty miles per hour* on controlled-access highways, expressways and freeways.''

''It is prima-facie unlawful for any person to exceed any of the speed limitations in any section of this Traffic

Code. In every charge of violation of this section, the affidavit and warrant shall specify the time, place and the speed at which the defendant is alleged to have driven, and also, the speed which this section declares is prima-facie lawful at the time and place of such alleged violation. However, in affidavits where a person is alleged to have driven at a greater speed than will permit him to bring the vehicle to a stop within the assured clear distance ahead, the affidavit and warrant need not specify the speed at which the defendant is alleged to have driven (ORC 4511.21; Ord. 24-66. Passed 3-16-66)."

It is also noted that the "right" of the city to regulate speed within the confines of its jurisdiction is not absolute. The pertinent portion of R. C. 4511.21 is as follows:

"Local authorities in their respective jurisdictions may authorize by ordinance *higher* prima-facie speeds than those stated in this section upon through highways, or upon highways or portions thereof where there are no intersections, or between widely spaced intersections, provided signs are erected giving notice of the authorized speed, but local authorities shall not modify or alter the basic rule set forth in the first paragraph of this section or in any event authorize by ordinance a speed in excess of fifty miles per hour." (Emphasis added.)

R. C. 4511.01, subsection (Z) definition states:

" 'Local Authorities' means every county, municipal, or other local board or body having authority to adopt police regulations under the constitution and the laws of this state."

This section also defines at subsection (AA):

" 'Street or highway' means the entire width between the boundary lines of every way open to the use of the public as a thoroughfare for purposes of vehicular travel."

"Through Highway" is defined in subsection (GG) as "every street or highway provided in Section 4511.65 of the Revised Code."

R. C. 4511.65 states, in pertinent part:

"Other streets or highways, or portions thereof, within a municipal corporation, with a continuous length of more than one mile between the limits of said street or highway or portion thereof, at the entrances to which vehicular traffic from the majority of intersecting streets or highways is controlled by 'stop' or 'yield' signs or traffic control signals are hereby designated as through highways. For purposes of this section, the limits of said street or highway or portion thereof, shall be municipal corporation lines, the physical terminus of the street or highway at which vehicular traffic thereon is required by regulatory signs to stop or yield to traffic on the intersecting street."

Therefore it is the finding of the court that Plyley's Lane at the time of the alleged offense is a "through highway within a municipal corporation and outside business district."

Section 333.03 of the Revised Ordinances of the city of Chillicothe is in conflict with the provisions of R. C. 4511.21 as to the determination of prima-facie lawful speed for "all other portions of the municipality, except on state routes outside business districts and alleys."

Under R. C. 4511.21 this is *not* permissible; *i. e.*, "local authorities * * * may authorize by ordinance *higher* prima-facie speeds than those stated in this section upon through. highways * * * but local authorities shall not alter or modify the basic rules set forth in the first paragraph of this section. * * *"

Section 333.03 of the Revised Ordinances of the city of Chillicothe and R. C. 4511.21 are compatible in regulation of speed limits in "school zones."

Essentially each reads as follows:

"It is prima-facie lawful for the operator of a motor vehicle * * * to operate the same at a speed not exceeding the following:"

R. C. 4511.21 (A)—

"Twenty miles per hour when passing a school building or the grounds thereof during school recess and while children are going to or leaving school during the opening

or closing hours, and when appropriate signs giving notice of the existence of the school are erected; except, that on controlled-access highways and expressway, if the right of way line fence has been erected without pedestrian opening, the speed shall be governed by division (D) of this section and on freeways, if the right of way line fence has been erected without pedestrian opening, the speed shall be governed by divisions (H) and (I) of this section."

Ord. 333.03 (b)—

"*Twenty miles per hour* when passing a school building or the grounds thereof during school recess and while children are going to or leaving school during the opening or closing hours, and when appropriate signs giving notice of the existence of the school are erected."

The site of the alleged offense was not—"when passing a *school building* or the *grounds thereof* during school recess or while children are going to or leaving school during the opening or closing hours * * *."

The court is not unaware of the "warning" nature of the sign erected 500 feet from the intersection of Betty and Plyley's Lanes and its legal significance to *both* parties. *McDonald* v. *Kelly* (1955), 101 Ohio App. 46; *Cook* v. *Hunter* (1935), 52 Ohio App. 354.

The determination of the prima-facie lawful speed limit, being penal in nature, must be, in conformity with the evidence submitted, that provided by R. C. 4511.21(C):

"Thirty-five miles per hour on all state routes or *through highways* within municipal corporations outside business districts * * *." (Emphasis added.)

A great deal of confusion exists in Ohio law as the result of the civil case of *Morris* v. *Bloomgren* (1933), 127 Ohio St. 147. That case was a civil suit growing out of an accident at an intersection; Morris driving west and Bloomgren going north. Morris approaching from right claimed right of way; Bloomgren contended Morris was driving at excessive speed and lost his preference "in intersection," even on through street. The phrase "in a lawful manner" became implanted by virtue of dicta, at page 153, as follows:

"* * * *If* the privileged occupant of the right of way is not so proceeding, *if* at the time of approaching or crossing the intersection he is driving at an unlawful, excessive speed * * * or *should* be driving through intersection on the left or wrong side of highway, such driver would not be proceeding in a lawful manner, and could not claim the preference given him by the quoted traffic sections * * *." (Emphasis added.)

The court stated that the "relative obligations of the drivers of the converging vehicles are governed by the rules of common law."

See, also, *Timmins* v. *Russomano* (1968), 14 Ohio St. 2d 124. Another civil case of note is *Deming* v. *Osinski* (1969), 21 Ohio App. 2d 89. The writer is impressed with Judge Hofstetter's comments in his concurring opinion, at page 96, as follows:

"* * * and the driver's violation of the common-law duty of ordinary care does not cause the vehicle to become an 'unlawful' user of the highway so as to avoid its preferential status."

The physical evidence in this case also discloses that the northbound vehicle was in the intersection, at the time it was struck on the left side or rear by the right front of the vehicle being operated by Miss C.

In this case, the child further admitted that "it was her fault" or "I'm sorry" or words of similar import at the time of immediate concern; *i. e.*, shortly after the accident.

Accordingly the claim of Miss C. that she was not required to yield the right of way to all other vehicles not obliged to stop, as required by Section 331.16 of the Revised Ordinances of the city of Chillicothe, is not substantiated.

In view of the above findings, and the Court being satisfied by proof beyond a reasonable doubt of the allegations of the complaint, it is therefore the judgment of the court that VLC is in fact a juvenile traffic offender as alleged in said complaint.

*Judgment accordingly.*